UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SHAYOTA,<br><br>Defendant. | Case No. 15-CR-00264-LHK<br><br>**ORDER REGARDING EVIDENCE RELATED TO TAX FRAUD INVESTIGATION**<br><br>Re: Dkt. No. 306 |

At the October 12, 2016 final pretrial conference, Defendants Joseph and Adriana Shayota argued that the Government was required to produce documents in its possession related to a tax fraud investigation of Walid Jamil conducted by the Internal Revenue Service. The Court ordered supplemental briefing on this issue. On October 13, 2016, Defendants filed supplemental briefing arguing that the Government was required to disclose documentary evidence of the tax fraud investigation of Walid Jamil as well as the tax fraud investigation and indictment of Raid Jamil. ECF No. 206 (Br.) at 3–4. Defendants also argued that this evidence was admissible for both substantive and impeachment purposes. *Id.* at 5. The Government responded on October 14, 2016. ECF No. 313 ("Resp.").

Also on October 14, 2016, Mario and Camilo Ramirez and Kevin and Fadi Attiq filed

separate motions to join Joseph and Adriana Shayota's supplemental briefing on the tax fraud evidence issue. The Court GRANTS Mario and Camilo Ramirez's Motion for Joinder, ECF No. 309, as well as Kevin and Fadi Attiq's Motion for Joinder, ECF No. 311.

**I.     BACKGROUND**

On May 14, 2015, a federal grand jury returned a three-count Indictment against Defendants Joseph Shayota, Adriana Shayota, Justin Shayota, Walid Jamil, Raid Jamil, Kevin Attiq, Fadi Attiq, Leslie Roman, Juan Romero, Mario Ramirez, and Camilo Ramirez (collectively, "Defendants"). ECF No. 1 ("Indictment"). All eleven Defendants were named in each of the three counts of the Indictment, which relates generally to alleged conspiracies to distribute relabeled, and to manufacture and distribute, counterfeit bottles of a liquid dietary supplement known as 5-Hour ENERGY from 2011 to 2012. *Id.* ¶ 1. In a pre-trial order that was filed on May 10, 2016, the Court determined that Counts Two and Three of the Indictment, which charged Defendants with violating the general conspiracy statute, 18 U.S.C. § 371, were "multiplicitous of each other." ECF No. 144 at 6. Pursuant to the Court's ruling, on June 29, 2016, the Government filed a two-count Superseding Information in the United States District Court for the Northern District of California. ECF No. 169 ("Superseding Information"). The first count in the Superseding Information is for conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. § 2320(a). Id. ¶ 16–28. The second count in the Superseding Information is for conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce in violation of 17 U.S.C. § 506, 18 U.S.C. § 2319, and 21 U.S.C. §§ 331 & 333. Id. ¶ 29–32.

On March 2, 2016, Justin Shayota pled guilty to Counts 1 and 3 of the Indictment pursuant to a plea agreement. ECF No. 105; ECF No. 106. On September 13, 2016, Raid Jamil pled guilty to Count 2 of the Superseding Information pursuant to a plea agreement. ECF No. 237. On September 23, 2016, Leslie Roman pled guilty to Count 2 of the Superseding Information pursuant to a plea agreement. ECF No. 275. Walid Jamil pled guilty on October 7, 2016. ECF No. 297. Juan Romero is a fugitive. ECF No. 147 at 4.

On August 19, 2016, the Government filed a notice identifying co-conspirator statements the Government intended to present at trial. ECF No. 206. Among these co-conspirator statements are portions of deposition testimony from Walid Jamil in a prior civil case and deposition testimony from Walid Jamil in a prior arbitration. ECF No. 206 at 4–6.[1] The Government has stated that it will not call Walid Jamil as a witness.

The Government has stated that at trial it will not present any deposition testimony of Raid Jamil or call Raid Jamil as a witness.

On October 6, 2016, Defendants learned that one year ago, the Internal Revenue Service ("IRS") was investigating Walid Jamil and Raid Jamil for tax fraud and requested documents from the Government about the instant criminal case. Br. Ex. A. Walid Jamil and Raid Jamil are brothers, and together they operated Midwest Wholesale Distributors ("Midwest"). ECF No. 169 at 4.

On September 13, 2016, Raid Jamil was indicted in the Eastern District of Michigan with two counts of filing false individual tax returns for the years 2009 and 2010 in violation of 26 U.S.C. § 7206(1). Resp. at 2. Walid Jamil was never charged with a crime as a result of the tax fraud investigation. *Id.* at 3.

## II. DISCUSSION

In their supplemental briefing, Defendants argue that the Government is required to turn over documents related to the tax fraud investigation of Walid Jamil and the tax fraud investigation and indictment of Raid Jamil for three reasons: (1) it is exculpatory evidence that must be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963); (2) it is subject to discovery under Federal Rule of Criminal Procedure ("Rule") 16(a)(1)(E)(i); and (3) it is impeachment material that must be disclosed under *Giglio v. United States*, 405 U.S. 150 (1972).

**A. Disclosure for Substantive Evidence Under *Brady* and Rule 16**

---

[1] Defendants Joseph and Adriana Shayota and Mario and Camilo Ramirez have moved to exclude co-conspirator statements. The Government and Mario Ramirez agree to introduce at trial some statements from Walid Jamil's deposition in the arbitration. The Court will rule on Defendants' motions in a separate order.

3
Case No. 15-CR-00264-LHK
ORDER REGARDING EVIDENCE RELATED TO TAX FRAUD INVESTIGATION

Under *Brady*, a prosecutor must disclose all exculpatory information in the possession, custody, or control of any branch of the Government, which is known or, by the exercise of due diligence, may become known to the prosecution. 373 U.S. at 90–91. In order to trigger a duty of disclosure under *Brady*, material in the Government's possession need not itself be admissible, but it must at least have the strong potential to lead to admissible exculpatory evidence or otherwise strongly influence a defendant's case. *See Malone v. Felker*, 453 F. App'x 754, 755 (9th Cir. 2011) (holding that the Government did not need to disclose certain material under *Brady* because the material "did not adequately or reasonably suggest to the prosecutor that it was or would lead to material, favorable evidence for the defense."); *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 162 (2d Cir. 2008) ("Brady material need not be admissible if it could lead to admissible evidence.") (internal quotation marks omitted); *Ellsworth v. Warden*, 333 F.3d 1, 5 (1st Cir. 2003) ("[W]e think it plain that evidence itself inadmissible could be so promising a lead to strong exculpatory evidence that there could be no justification for withholding it."); *see also Butler v. Stephens*, 625 F. App'x 641, 655 (5th Cir. 2015) ("The suppressed evidence need not be admissible to be material under Brady; but it must, somehow, create a reasonable probability that the result of the proceeding would be different.").

Rule 16 requires that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . documents . . . if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." FED. R. CRIM. P. 16(a)(1)(E). Like *Brady* material, "Rule 16 materials need not be admissible, as long as there is a strong indication that . . . the evidence will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Johnson*, 2015 WL 3630952, at *1 (N.D. Cal. June 10, 2015) (internal quotation marks omitted); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (evidence is discoverable under Rule 16 "even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence.") (internal quotation marks omitted).

Thus, in order to determine whether the Government must disclose the documents relating to tax fraud under either *Brady* or under Rule 16, the Court must determine whether the documents are likely to lead to admissible evidence or otherwise substantially assist in the defense.

Defendants intend to introduce evidence that Walid Jamil was investigated for tax fraud and that Raid Jamil was investigated and indicted for tax fraud. Defendants claim that this is admissible as "substantive evidence" to prove "that Walid and [Raid] Jamil are sophisticated businesspeople who prepared and planned to use Midwest to defraud victims . . . for financial gain," "that Walid and [Raid] Jamil had the knowledge and intent to conceal fraudulent conduct involving their business from others," and "that Walid and [Raid] Jamil had a modus operandi of working with each other and their business, Midwest, to perpetuate and conceal fraudulent conduct." Br. at 3–4. Defendants claim that these facts tend to support their theory that Walid and Raid Jamil provided Defendants with relabeled and counterfeit 5-Hour Energy drinks without informing Defendants that the 5-Hour Energy drinks were relabeled or counterfeit. Br. at 2. In other words, Defendants believe that evidence of investigation and/or indictment for tax fraud shows that Walid and Raid Jamil were likely to have defrauded Defendants with relabeled or counterfeit 5-Hour Energy drinks.

The Government argues that this evidence is inadmissible to prove these facts because "the Defendants want to argue that the tax investigation shows evidence of a character trait of Walid Jamil for deceptiveness, and then further argue that Mr. Jamil acted in accord with same during his dealings with the defendants in the 5-Hour ENERGY conspiracies" in violation of Federal Rule of Evidence ("Rule") 404(b). Resp. at 5. The Government also points out that the evidence does not show that Walid Jamil committed tax fraud, but merely shows that he was investigated for tax fraud and never indicted. However, a party need not have been indicted for prior conduct in order for evidence of that conduct to be admissible under Rule 404(b). *United States v. Spivey*, 7 F. App'x 595, 596 (9th Cir. 2001) (holding that "evidence of uncharged conduct" was admissible under Rule 404(b)). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person

5

acted in accordance with the character." However, Rule 404(b) states that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Although prior act evidence is generally offered by the Government, "there are a few reported decisions on use of such evidence by the defense." FED. R. EVID. 404, Advisory Committee Notes on 1991 Amendment; *see also, e.g.*, *United States v. McClure*, 546 F.2d 670 (5th Cir. 1990) (analyzing the acts of an informant offered in entrapment defense under Rule 404(b)). Thus, Rule 404(b) is relevant even though Defendants seek to admit the prior act evidence.

Under Rule 404(b), "the district court may admit evidence of prior bad acts if it (1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged." *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010). The Court first considers whether Defendant's tax fraud evidence is material to "another purpose" other than Walid and Raid Jamil's character to defraud.

In their Brief, Defendants claim that the tax fraud evidence is relevant to "prepar[ation] and plann[ing]," "knowledge and intent," and "modus operandi." Br. at 3–4. However, even assuming that Walid and Raid Jamil committed tax fraud, the fact that Walid and Raid Jamil "prepared and planned" to commit tax fraud, had "knowledge and intent" to commit tax fraud, and had a "modus operandi" of "perpetuat[ing] and conceal[ing] fraudulent conduct" would be relevant only if it further showed that Walid and Raid Jamil likely defrauded Defendants with relabeled or counterfeit 5-Hour Energy drinks in the instant case. Defendants' arguments focus on why and how Walid and Raid Jamil defrauded the U.S. Treasury through tax fraud, but Defendants do not address how the tax fraud itself could be relevant to the claim that Walid and Raid Jamil defrauded Defendants with relabeled or counterfeit 5-Hour Energy drinks except through a character inference. Defendants simply claim that the fact that Walid and Raid Jamil may have committed tax fraud "supports the Shayotas' defense that they were duped by Walid Jamil and Raid 'Brian' Jamil." Br. at 4. It is the burden of the party seeking admission to show

that the evidence is material to a purpose other than character. *United States v. Obabueki*, 875 F.2d 871, at *1 (9th Cir. 1989) (table case) ("[T]he party seeking admission of prior acts evidence under 404(b) must first demonstrate that the proffered evidence satisfies [the] four [*Lozano*] preconditions."). Defendants have failed to meet this burden because Defendants have claimed only that the tax fraud evidence is relevant in some unspecified way in showing that Walid and Brian Jamil defrauded Defendants using relabeled or counterfeit 5-Hour Energy drinks. Defendants have not explained how the tax fraud evidence is relevant to a purpose permitted under Rule 404(b).

Tax fraud and fraudulently relabeling and counterfeiting energy drinks are not related in a way that might be material to proving knowledge, intent, preparation, planning, or modus operandi. *United States v. Stratos*, 2015 WL 1814315, at *4 (E.D. Cal. Apr. 21, 2015) (finding that wage fraud was not sufficiently similar to the wire fraud charged in the indictment to "establish a common plan or scheme under Rule 404(b)"). Whether Walid and Raid Jamil committed tax fraud in 2009 and 2010 is not relevant to whether Walid and Raid Jamil relabeled or counterfeited 5-Hour Energy in 2011 and 2012, what plans they had for relabeling or manufacturing counterfeit 5-Hour Energy, or whether they had any particular knowledge or skills that would be useful in relabeling or counterfeiting energy drinks. On the contrary, the only connection between these two acts are that in both cases, Walid and Raid Jamil allegedly engaged in some sort of fraud. Thus, for the tax investigation evidence to be probative that Walid and Raid Jamil defrauded Defendants, the inference would have to be that Walid and Raid Jamil have the tendency to commit fraud. This inference is not permissible under Rule 404(b), and therefore the evidence is not material to a permissible purpose. *United States v. Moorehead*, 57 F.3d 875, 879 (9th Cir. 1995) (holding that inferences about character are "precisely those inferences that are forbidden by Rule 404(b)"). The Court finds that the first factor is not met under *Lozano*.

For similar reasons, the fourth factor under *Lozano*, similarity, also is not met. Analyzing this factor is not always necessary. Similarity is important in the Rule 404(b) analysis only "if similarity of the crimes is the basis for the relevance of the evidence" *United States v. Riggins*, 539

7

Case No. 15-CR-00264-LHK
ORDER REGARDING EVIDENCE RELATED TO TAX FRAUD INVESTIGATION

F.2d 682, 683 (9th Cir. 1976). Defendants have not described the relevance of the tax fraud evidence except to say that it "supports" their theory that Walid and Raid Jamil defrauded Defendants. Br. at 4. However, tax fraud has little to do with fraudulently selling relabeled or fraudulently manufacturing counterfeit energy drinks, except for the fact that both crimes involve fraud. *Compare* 18 U.S.C. § 2320(a)(1) (including "knowingly us[ing] a counterfeit mark" as an element); *with* 26 U.S.C. § 7206(1) (including "[w]illfully mak[ing] . . . any return . . . which [the defendant] does not believe to be true and correct as to every material matter" as an element). The alleged tax fraud does not demonstrate that Walid and Raid Jamil had any particular knowledge or intent, common plan or preparation, or consistent modus operandi to commit fraudulent selling of relabeled 5-Hour Energy or fraudulent manufacturing of counterfeit 5-Hour Energy. The only similarity between the acts, and thus the only relevance of the alleged tax fraud, is the allegation that Walid and Raid Jamil have a character for committing fraud. This inference is impermissible as a basis for admission under Rule 404(b), and therefore the Court finds that the fourth factor is not met.

The first and fourth factor under *Lozano* are not met, and therefore the Court need not consider the other factors. Nevertheless, the Court notes again that Defendants have not provided any proof that Walid Jamil committed any tax fraud beyond the fact that he was investigated for doing so. Mere preliminary steps of this kind are not sufficient to show that a party committed the alleged prior act. *See, e.g.*, *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (finding that a prior lawsuit for violation of mandatory disclosure rules had not been proven sufficiently because the lawsuit settled with no admission of liability). Thus, Defendants are not able to prove the third *Lozano* factor, that the party committed the alleged prior act, for Walid Jamil. *Lozano*, 623 F.3d at 1059.

Finally, the Court performs balancing analysis under Rule 403 to determine whether the tax investigation is admissible. *See United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc) (holding that Rule 403 balancing is an aspect of the test for admissibility under Rule 404(b)). Under Rule 403, a court may exclude otherwise admissible evidence if its probative value

is substantially outweighed by unfair prejudice, confusion, delay, or other factors.

In this case, the probative value of the evidence is low. As discussed above, Defendants have not shown that the tax investigation evidence is relevant to any purpose other than impermissible character evidence. An alleged tax fraud bears little similarity to a fraudulent conspiracy involving selling relabeled and manufacturing and selling counterfeit energy drinks. The evidence is not probative as to Walid Jamil because the evidence shows that Walid Jamil was never indicted for tax fraud. The mere fact that Walid Jamil was investigated for tax fraud is not probative of any aspect of the 5-Hour Energy conspiracy. Additionally, Raid Jamil has not been convicted of tax fraud. Resp. Ex. A at 3 (showing an indictment date of September 13, 2016); *see also* No. 16-CR-20623-JCO-MKM, ECF No. 10 (E.D. Mich. 2016) (setting a trial date of November 21, 2016). Like Defendants Joseph and Adriana Shayota and Mario and Camilo Ramirez in the instant case, Raid Jamil enjoys a presumption of innocence at this time. *See Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit*, § 1.2 (2010 ed.) ("The indictment is not evidence and does not prove anything. The defendant . . . is presumed innocent unless and until the government proves the defendant guilty beyond a reasonable doubt."). Considering this presumption of innocence, the fact that Raid Jamil has been indicted for tax fraud is not probative of any aspect of the 5-Hour Energy conspiracy.

On the other side of the scale, the potential for prejudice and confusion is high. A jury is likely to draw the conclusion that Raid Jamil, who was indicted for tax fraud, has a character for fraud and is therefore more likely to have committed other frauds. This inference is forbidden under Rule 404(b) and is therefore unduly prejudicial. *Moreno v. Los Angeles Cty. Sheriff's Dep't*, 2015 WL 5050507, at *2 (C.D. Cal. Aug. 24, 2015) (finding that "the probative value of [Plaintiff's] alleged gang affiliation is marginal and is substantially outweighed by the risk that the jury will draw impermissible character inferences"). Furthermore, introducing evidence of this kind against Walid and Raid Jamil would waste time because it would involve a time-consuming effort to prove whether Walid and Raid Jamil committed the alleged tax fraud. Therefore, the Court finds that the prejudicial impact of this evidence would significantly outweigh its probative

9

Case No. 15-CR-00264-LHK
ORDER REGARDING EVIDENCE RELATED TO TAX FRAUD INVESTIGATION

value, and therefore evidence of the tax investigation fails the Rule 403 balancing. Rule 403 thus provides an independent ground for excluding the evidence.

Accordingly, the tax evidence does not meet the requirements of *Lozano* or of Rule 403, and therefore the Court finds that evidence about the tax fraud investigation of Walid Jamil and about the tax fraud investigation and indictment of Raid Jamil are not admissible for substantive purposes. Therefore, the Court finds that the documents related to the tax fraud need not be disclosed under *Brady* or Rule 16 under the theory that disclosure might lead to substantive evidence.

### A. Disclosure for Impeachment Evidence Under *Giglio*

Defendants also argue that under *Giglio v. United States*, 405 U.S. 150 (1972), the Government must disclose evidence that Walid Jamil was investigated for tax fraud for use as impeachment evidence.

Evidence of tax fraud is not admissible to impeach Raid Jamil because the Government does not intend to call Raid Jamil as a witness or to introduce his deposition transcripts. *See* FED. R. EVID. 806 ("When a hearsay statement – or a statement described in Rule 801(d)(2)(C),(D), or (E) – has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness.").

Walid Jamil also will not be called as a witness, but the Government intends to introduce certain deposition testimony of Walid Jamil. Defendants seek to use extrinsic "evidence of [Walid Jamil's] prior dishonest acts," such as testimony from government agents who conducted the tax fraud investigation, to impeach Walid Jamil's deposition testimony. Br. at 5.

However, if Walid Jamil were testifying in person, Defendants would only be allowed to "inquire into" the tax fraud investigation on cross-examination. FED. R. EVID. 608(b). Because the Government is introducing Walid Jamil's deposition testimony, his "credibility may be attacked . . . by any evidence that would be admissible for those purposes if [Walid Jamil] had testified as a witness." FED. R. EVID. 806. The Ninth Circuit has stated that "Federal Rule of Evidence 608(b) . . . prohibits the use of extrinsic evidence to prove specific instances of misconduct for the purpose

of attacking a witness's credibility." *See Bonin v. Calderon*, 59 F.3d 815, 829 (9th Cir. 1995).

However, the Ninth Circuit, along with most other Circuit Courts of Appeals, has not addressed precisely the situation in the instant case, in which a party seeks to impeach a hearsay declarant who cannot be subject to cross-examination. However, the Third Circuit and the District of Columbia Circuit have found that a party may not introduce extrinsic evidence to impeach a hearsay declarant. *See United States v. Saada*, 212 F.3d 210, 221 (3d Cir. 2000) ("Rule 806 does not modify Rule 608(b)'s ban on extrinsic evidence of prior bad acts in the context of hearsay declarants, even when those declarants are unavailable to testify."); *United States v. White*, 116 F.3d 903, 920 (D.C. Cir. 1997) (holding that counsel "could not have made reference to any extrinsic proof" to impeach hearsay declarant); *see also United States v. Little*, 2012 WL 2563796, at *4 (N.D. Cal. June 28, 2012) ("[T]he Court is persuaded by the reasoning in *White* and *Saada* and finds that Rule 801(d)(2)(E) does not modify Rule 608(b), and that under Rule 608(b), Defendant cannot rely on extrinsic evidence to impeach [hearsay] statements."); *but see United States v. Friedman*, 854 F.2d 535, 570 n.8 (2d Cir.1988) (suggesting in dicta that "resort to extrinsic evidence may be the only means of presenting" impeaching evidence against a hearsay declarant).

The Court finds the decisions of the Third Circuit and the District of Columbia Circuit to be persuasive. Rule 608(b) bars parties from introducing extrinsic evidence for impeachment, and "[n]othing in Rule 801 creates a carve-out for the admission of extrinsic evidence for impeachment in situations where the declarant is not available." *Little*, 2012 WL 2563796, at *4. Defendants therefore would not be able to use extrinsic evidence such as first-hand testimony from agents who conducted the tax fraud investigation to impeach the deposition testimony of Walid Jamil.

In its Final Pretrial Conference Order of October 12, 2016, the Court stated that the parties should meet and confer to attempt to resolve this issue, and that the parties should consider reading a stipulation to the jury such as the following: "Walid Jamil was investigated for tax fraud by the Internal Revenue Service ("IRS") in Michigan. The Michigan IRS agents requested and

11

Case No. 15-CR-00264-LHK
ORDER REGARDING EVIDENCE RELATED TO TAX FRAUD INVESTIGATION

received documents about this criminal case from the law enforcement agents investigating this criminal case. Walid Jamil was not indicted for tax fraud." Order at 1. The Government has stated that "the Court's proposed stipulation [is] acceptable to the government to be read to the jury." Resp. at 4. The Court therefore GRANTS the parties permission to read the proposed stipulation to the jury.

**IT IS SO ORDERED.**

Dated: October 19, 2016

_____
LUCY H. KOH
United States District Judge