UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH SHAYOTA,<br><br>　　　　　Defendant. | Case No. 15-CR-00264-LHK-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS**<br><br>Re: Dkt. Nos. 269, 270, 295, 312 |

Before the Court are Adriana Shayota and Joseph Shayota's motion, ECF No. 270 ("Shayota Mot."), and Mario Ramirez and Camilo Ramirez's motion, ECF No. 269 ("Ramirez Mot."), to exclude the Government's noticed co-conspirator statements.  Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendants' motions.

## I.　　FACTUAL AND PROCEDURALBACKGROUND

On May 14, 2015, a federal grand jury returned a three-count Indictment against Defendants Joseph Shayota, Adriana Shayota, Justin Shayota, Walid Jamil, Raid Jamil, Kevin Attiq, Fadi Attiq, Leslie Roman, Juan Romero, Mario Ramirez, and Camilo Ramirez (collectively,

1

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1  "Defendants"). ECF No. 1 ("Indictment"). All eleven Defendants were named in each of the

2  three counts of the Indictment, which relates generally to alleged conspiracies to distribute

3  relabeled, and to manufacture and distribute counterfeit, bottles of a liquid dietary supplement

4  known as 5-Hour ENERGY. *Id.* ¶ 1. In a pre-trial order that was filed on May 10, 2016, the

5  Court determined that Counts Two and Three of the Indictment, which charged Defendants with

6  violating the general conspiracy statute, 18 U.S.C. § 371, were "multiplicitous of each other."

7  ECF No. 144 at 6. Pursuant to the Court's ruling, on June 29, 2016, the Government filed a two-

8  count Superseding Information in the United States District Court for the Northern District of

9  California. ECF No. 169 ("Superseding Information"). The first count in the Superseding

10  Information is for conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. § 2320(a).

11  *Id.* ¶ 16–28. The second count in the Superseding Information is for conspiracy to commit

12  criminal copyright infringement and to introduce misbranded food into interstate commerce in

13  violation of 17 U.S.C. § 506, 18 U.S.C. § 2319, and 21 U.S.C. §§ 331 & 333. *Id.* ¶ 29–32.

14       On March 2, 2016, Justin Shayota pled guilty to Counts 1 and 3 of the Indictment pursuant

15  to a plea agreement. ECF No. 105; ECF No. 106. On September 13, 2016, Raid Jamil pled guilty

16  to Count 2 of the Superseding Information pursuant to a plea agreement. ECF No. 237. On

17  September 23, 2016, Leslie Roman pled guilty to Count 2 of the Superseding Information

18  pursuant to a plea agreement. ECF No. 275. Walid Jamil pled guilty on October 7, 2016. ECF

19  No. 297. Juan Romero is a fugitive. ECF No. 147 at 4.

20       On August 19, 2016, the Government filed a notice identifying the co-conspirator

21  statements the Government intended to present at trial. ECF No. 206 ("Gov't Notice"). Nearly all

22  of the statements come from depositions taken in two now-consolidated civil proceedings in which

23  the makers of 5-Hour ENERGY sued approximately 70 parties, including Defendants in the

24  instant criminal proceeding, for the manufacture and distribution of counterfeit 5-Hour ENERGY.

25  On October 25, 2012, the first civil case was filed in the Eastern District of New York. *Innovation*

26  *Ventures, LLC, et al. v. Ultimate One Distributing Corp., et al.*, E.D.N.Y. Case No. 1:12-CV-

27

28  Case No. 15-CR-00264-LHK-1
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
    GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

2

1   05354-KAM-ST ("*Ultimate* Action"), ECF No. 1.  In the *Ultimate* Action, the plaintiffs brought

2   multiple claims against Mario and Camilo Ramirez (the "Ramirez defendants"), Adriana and

3   Joseph Shayota (the "Shayota Defendants"), and Walid Jamil, among others.  E.D.N.Y. Case No.

4   1:12-CV-05354-KAM-ST, ECF No. 291 ("*Ultimate* Seventh Amended Compl.").  The claims

5   included (1) federal trademark infringement under the Lanham Act, (2) contributory trademark

6   infringement, (3) false description and designation of origin in commerce, (4) federal false

7   advertising, (5) federal dilution of the 5-Hour ENERGY mark, (6) New York dilution of mark and

8   injury to business reputation, (7) New York deceptive business practices, (8) common law unfair

9   competition, and (9) common law unjust enrichment.  *Id.* ¶¶ 252–322.  The plaintiffs sought

10  injunctive relief, statutory or actual damages, and interest.  *Id.* at 60–62.

11      On October 26, 2012, the makers of 5-Hour ENERGY filed a second civil case in the

12  Northern District of California.  *Innovation Ventures, et al. v. Pittsburgh Wholesale Grocers Inc.,*

13  *et al.*, N.D. Cal. Case No. 3:12-CV-05523-WHA ("*Pittsburgh* Action"), ECF No. 1.  In the

14  *Pittsburgh* Action, the plaintiffs brought nearly identical claims as in the *Ultimate* Action against

15  Kevin Attiq, his company, Dan Dee Company, and Fadi Attiq, among others.  *Id.* ¶¶ 79–149

16  ("*Pittsburgh* Compl.") (bringing identical federal and common law claims as the pre-consolidation

17  *Ultimate* Action, but substituting California false advertising and California unfair competition in

18  place of the New York causes of action).  The plaintiffs sought injunctive relief, statutory or actual

19  damages, and interest.  *Id.* at 24–25.

20      On January 23, 2013, Dan Dee Company, one of the defendants in the *Pittsburgh* action,

21  filed in the *Pittsburgh* Action in the Northern District of California a third-party complaint against

22  Walid Jamil, the Shayota defendants, and the Ramirez defendants, among others, for intentional

23  misrepresentation, breach of contract, tortious interference with contract and prospective business

24  relations, false labeling and false advertising under the Lanham Act, violations of California's

25  Unfair Competition Law, equitable indemnification, and equitable contribution.  N.D. Cal. Case

26  No. 3:12-CV-05523-WHA, ECF No. 160 ("*Pittsburgh* Third-Party Compl.") ¶¶ 67–122.  The

27                                                  3

28  Case No. 15-CR-00264-LHK-1
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
    GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

1    third-party complaint alleged that the third-party defendants were at fault for Dan Dee Company's

2    involvement in the sale and distribution of counterfeit 5-Hour ENERGY. *Id.*

3            On November 12, 2013, the *Pittsburgh* Action was transferred to the Eastern District of

4    New York. *Id.* ECF No. 530. On March 13, 2014, the *Ultimate* Action and the *Pittsburgh* Action

5    were consolidated into what will hereafter be referred to as the "Consolidated *Ultimate* Action."

6    E.D.N.Y. Case No. 1:12-CV-05354-KAM-ST, ECF No. 680.

7            The Government seeks to introduce depositions from both the *Ultimate* Action and the

8    *Pittsburgh* Action before consolidation. From the *Ultimate* Action, the Government seeks to

9    introduce the November 27, 2012 deposition of Walid Jamil, the December 3, 2012 deposition of

10   Mario Ramirez, the December 5, 2012 deposition of Joseph Shayota, the December 6, 2012

11   deposition of Adriana Shayota, the December 10, 2012 deposition of Leslie Roman, and the June

12   19, 2013 deposition of Camilo Ramirez. Gov't Notice at 2–11; ECF No. 274; ECF No. 301.

13   From the *Pittsburgh* Action, the Government seeks to introduce the November 5, 2012 deposition

14   of Kevin Attiq, the April 25, 2013 deposition of Fadi Attiq, the September 16, 2013 deposition of

15   Walid Jamil, the October 11, 2013 deposition of Kevin Attiq, and the October 23, 2013 deposition

16   of Mario Ramirez. Gov't Notice at 2–11; ECF No. 274; ECF No. 301. The Government also

17   seeks to introduce the October 30, 2013 deposition of Walid Jamil, which was taken in both the

18   *Ultimate* Action and the *Pittsburgh* Action before consolidation.[1] ECF No. 274-4. Finally, the

19

---

20   [1] With the exception of the November 5, 2012 deposition of Kevin Attiq in the *Pittsburgh* Action
     and the November 27, 2012 deposition of Walid Jamil in the *Ultimate* Action, discussed further

21   below, the Ramirez defendants and the Shayota defendants had been issued a summons and
     appeared in the *Ultimate* Action and the *Pittsburgh* Action before all of these depositions took

22   place. In the *Ultimate* Action, a summons was issued to Joseph Shayota on November 1, 2012,
     and a summons was issued to Adriana Shayota and the Ramirez defendants on November 27,

23   2012. E.D.N.Y. Case No. 1:12-CV-05354-KAM-ST, ECF Nos. 16–17, 147. Counsel for Joseph
     Shayota appeared on November 26, 2012, counsel for Adriana Shayota appeared on November 28,

24   2012, and counsel for the Ramirez defendants appeared on November 30, 2012. *Id.* ECF Nos.
     131, 162, 187, 188.

25           In the *Pittsburgh* Action, the third-party complaint against the Ramirez defendants and the
     Shayota defendants was filed on January 23, 2013, and a summons was issued to the Ramirez

26   defendants and the Shayota defendants on January 29, 2013. N.D. Cal. Case No. 3:12-CV-05523-
     WHA, ECF Nos. 160, 169. On March 11, 2013, the Ramirez defendants filed a stipulation in the

27   *Pittsburgh* Action, and on March 29, 2013, the Ramirez defendants filed an answer to the Dan Dee

                                                    4

1    Government's notice indicated that the Government seeks to introduce the February 7, 2013

2    deposition of Raid Jamil, but has not indicated in which action the deposition was taken.[2]  Gov't

3    Notice at 6.

4         Additionally, in the Government's notice of co-conspirator statements, the Government

5    indicated that it would seek to introduce statements made by Leslie Roman during two FBI

6    interviews on June 18, 2015 and November 30, 2015.  Gov't Notice at 9.

7         The remaining statements come from a November 8, 2012 deposition of Walid Jamil.  This

8    deposition was taken as part of an arbitration before ADR Services, Inc. of San Diego where

9    Joseph Shayota and Adriana Shayota asserted claims against Mario Ramirez, Camilo Ramirez,

10   and Green Health Stores, Inc. in *Shayota v. Green Health Stores, Inc., et al.*, ADRS Case No. 12-

11   5252-YH.  Gov't Notice at 4.

12        On August 29, 2016, Adriana Shayota and Mario Ramirez filed in the instant criminal case

13   notices of intent to introduce portions of the deposition transcripts from the prior civil trial and

14   arbitration.  ECF No. 210 ("Mario Notice"); ECF No. 211 ("Adriana Notice").  On September 21,

15   2016, the Government filed a motion opposing as hearsay all of Adriana Shayota's proposed

16   deposition statements and the deposition statements proposed by Mario Ramirez that did not

17   overlap with the Government's own proposed co-conspirator statements.  ECF No. 271.  The

18   Defendants did not oppose the Government's motion.  Accordingly, on October 4, 2016, the Court

19   granted the Government's motion.  ECF No. 286.

20        On September 21, 2016, Defendants responded to the Government's notice of co-

21   conspirator statements with three separate motions to exclude co-conspirator statements: the

22   Ramirez defendants filed a joint motion, ECF No. 269 ("Ramirez Mot."), the Shayota defendants

23

24   Company third-party complaint. *Id.* ECF Nos. 250, 284.  On February 27, 2013, counsel for the
     Shayota defendants appeared in the *Pittsburgh* Action, and on March 22, 2013, the Shayota

25   defendants filed an answer to the Dan Dee Company third-party complaint.  *Id.* ECF Nos. 196,
     197, 272.

26   [2] The parties' failure to indicate in which action the deposition was taken does not affect the
     Court's analysis because at the October 12, 2016 hearing on the instant motions, the Government

27   stated it would no longer seek to introduce the February 7, 2013 deposition of Raid Jamil.

5

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

filed a joint motion, ECF No. 270 ("Shayota Mot."), and Walid Jamil filed a motion, ECF No. 272 ("Jamil Mot."). On September 28, 2016, the Government filed an Omnibus Response to Defendants' Motions to Exclude Co-Conspirator Statements. ECF No. 280 ("Gov't Resp."). On October 6, 2016, Walid Jamil, in anticipation of pleading guilty on October 7, 2016, withdrew all motions, including the motion to exclude co-conspirator statements. ECF No. 290.

On October 5, 2016, the Court ordered the parties to provide supplemental briefing on the issue of the Government's proposed co-conspirator statements. ECF No. 287.

On October 7, 2016, pursuant to the Court's order, the Government, the Ramirez defendants and the Shayota defendants filed supplemental briefs regarding the co-conspirator statements the Government seeks to introduce. ECF No. 295 ("Gov't Supp."); ECF No. 291 ("Ramirez Supp."); ECF No. 296 ("Shayota Supp.").

On October 12, 2016, the Court held a hearing on the issue of the co-conspirator statements the Government seeks to introduce. The Court ordered the parties to provide supplemental briefing identifying conflicts of interest that Defendants had during the prior civil proceedings and how such conflicts would affect the admissibility of the deposition statements in the instant criminal case. ECF No. 300. On October 13, 2016, the Ramirez Defendants and the Shayota defendants filed supplemental briefs. ECF No. 305 ("Ramirez Conflict Br."); ECF No. 307 ("Shayota Conflict Br."). On October 14, 2016, the Government filed its response. ECF No. 312 ("Gov't Conflict Resp.").

The following chart identifies the proceedings containing the statements the Government seeks to introduce:

| Date | Deponent/Interviewee | Proceeding |
|---|---|---|
| November 5, 2012 | Kevin Attiq | *Pittsburgh* Action |
| November 8, 2012 | Walid Jamil | *Green Health Stores, Inc.* arbitration |
| November 27, 2012 | Walid Jamil | *Ultimate* Action |
| December 3, 2012 | Mario Ramirez | *Ultimate* Action |

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

| December 5, 2012 | Joseph Shayota | *Ultimate* Action |
|---|---|---|
| December 6, 2012 | Adriana Shayota | *Ultimate* Action |
| December 10, 2012 | Leslie Roman | *Ultimate* Action |
| February 7, 2013 | Raid Jamil | See footnote 2, above. |
| April 25, 2013 | Fadi Attiq | *Pittsburgh* Action |
| June 19, 2013 | Camilo Ramirez | *Ultimate* Action |
| September 16, 2013 | Walid Jamil | *Pittsburgh* Action |
| October 11, 2013 | Kevin Attiq | *Pittsburgh* Action |
| October 23, 2013 | Mario Ramirez | *Pittsburgh* Action |
| October 30, 2013 | Walid Jamil | *Ultimate* and *Pittsburgh* Actions |
| June 18, 2015 | Leslie Roman | FBI Interview |
| November 30, 2015 | Leslie Roman | FBI Interview |

## II.   DISCUSSION

Defendants argue that the co-conspirator statements should be excluded because their admission would (1) violate the Confrontation Clause, (2) violate the rule against hearsay, (3) violate due process based on lack of notice, and (4) create administrative difficulties warranting exclusion based on Federal Rule of Evidence 403.  The Government argues that the statements are admissible because (1) the statements do not violate the Confrontation Clause, (2) the former testimony, co-conspirator, and statement against interest exceptions to the rule against hearsay apply, and (3) sufficient notice was provided.

First, the Court discusses co-conspirator statements that are admissible or have been excluded by party agreement or acquiescence.  Second, the Court addresses whether the admission of the remaining statements violates the Confrontation Clause.  Third, the Court discusses the exceptions to the rule against hearsay.  Finally, the Court addresses Defendants' arguments concerning lack of notice and Rule 403.  For the convenience of the parties, the Court provides a summary chart of its ruling at the end of this Order.

7

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.      **Statements Excluded or That Are Admissible by Government or Defendant Agreement or Acquiescence**

1.      **The November 8, 2012 Deposition of Walid Jamil**

As part of the Government's August 19, 2016 Notice of Co-Conspirator Statements, the Government provided notice that the Government was seeking to introduce portions of the November 8, 2012 deposition of Walid Jamil taken in the *Shayota v. Green Health Stores, Inc.* matter.  Gov't Notice at 4.  On August 29, 2016, Mario Ramirez filed a notice of intent to introduce statements from the November 8, 2012 deposition of Walid Jamil.  ECF No. 210 ("Mario Notice").  The Government agreed that Mario Ramirez could introduce the statements from the November 8, 2012 deposition transcript that overlapped with the co-conspirator statements that the Government sought to introduce.  ECF No. 271 at 4.  Thus, the Government may introduce against Mario Ramirez the November 8, 2012 deposition statements that both the Government and Mario Ramirez sought to introduce.  Mario Ramirez may also introduce the same statements.  However, for the reasons stated below, the Government may not introduce these statements against the Shayota defendants or Camilo Ramirez.

With the exception of the above, however, the Government has failed to oppose Defendants' motions to exclude the November 8, 2012 deposition of Walid Jamil and has failed to respond to the Court's requests for briefing with respect to that deposition.  Therefore, the Court finds that the Government has abandoned its claim to the admission of the November 8, 2012 deposition of Walid Jamil and GRANTS Defendants' motions to exclude with respect to that deposition.  *See Gonzales v. City of San Jose*, 2015 WL 7878121, at *3 (N.D. Cal. Dec. 4, 2015) (excluding evidence where a party fails to oppose a motion to exclude).

2.      **The February 7, 2013 Deposition of Raid Jamil**

As part of the Government's August 19, 2016 Notice of Co-Conspirator Statements, the Government provided notice that the Government was seeking to introduce the February 7, 2013 deposition of Raid Jamil.  Gov't Notice at 6.  However, the Government has failed to oppose Defendants' motions to exclude this deposition and has failed to respond to the Court's requests

8

United States District Court
Northern District of California

for briefing with respect to this deposition.  Additionally, at the October 12, 2016 hearing on the instant motions, the Government stated it would no longer seek to introduce any statements made by Raid Jamil.  Therefore, the Court finds that the Government has abandoned its claim to the admission of the February 7, 2013 deposition of Raid Jamil and GRANTS Defendants' motions with respect to that deposition.  *See Gonzales*, 2015 WL 7878121 at *3 (excluding evidence where a party fails to oppose a motion to exclude).

### 3. The June 18, 2015 and November 30, 2015 FBI Interviews of Leslie Roman

As part of the Government's August 19, 2016 Notice of Co-Conspirator Statements, the Government provided notice that the Government was seeking to introduce the June 18, 2015 and November 30, 2015 FBI interviews of Leslie Roman.  Gov't Notice at 9.  However, the Government has failed to oppose Defendants' motions to exclude these interviews and has failed to respond to the Court's requests for briefing with respect to these interviews.  Therefore, the Court finds that the Government has abandoned its claim to the admission of the FBI interviews and GRANTS Defendants' motions to exclude these interviews.  *See Gonzales*, 2015 WL 7878121 at *3 (excluding evidence where a party fails to oppose a motion to exclude).

### 4. Statements the Government Has Withdrawn

On October 13, 2016, the Government filed a statement withdrawing its request to introduce the October 30, 2013 deposition of Walid Jamil against Mario Ramirez and Camilo Ramirez because the statements are duplicative of other testimony the Government seeks to introduce.  ECF No. 304.  In the same filing, the Government withdrew its request to introduce the October 23, 2013 deposition of Mario Ramirez against Camilo Ramirez.  *Id.*

### 5. Statements From Depositions For Which the Government Has Agreed or Acquiesced There Was Insufficient Notice

At the October 12, 2016 hearing on the instant motions, the Government agreed that certain Defendants did not receive notice with respect to some of the deposition statements because they had not yet become parties to the civil cases in which the depositions were taken.

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

1   The Government agreed that the Shayota defendants and the Ramirez defendants did not receive

2   notice of the November 5, 2012 deposition of Kevin Attiq in the *Pittsburgh* Action.  The

3   Government also agreed that Adriana Shayota and the Ramirez defendants did not receive notice

4   of the November 27, 2012 deposition of Walid Jamil in the *Ultimate* Action.  Below, the Court

5   holds that the Confrontation Clause bars the introduction of prior deposition statements where a

6   defendant has received insufficient notice of that deposition.  Therefore, as discussed further

7   below, the November 5, 2012 deposition of Kevin Attiq is inadmissible against the Shayota

8   defendants and the Ramirez defendants, and the November 27, 2012 deposition of Walid Jamil is

9   inadmissible against Adriana Shayota and the Ramirez defendants.

10   Finally, the Ramirez defendants indicated in their supplemental briefing that they were

11   unsure if they had received notice of the depositions the Government seeks to introduce.  Ramirez

12   Supp. Ex. A.  Thus, at the October 12, 2016 hearing on the instant motions, the Court ordered the

13   Government to provide evidence of notice with respect to the depositions.  The evidence the

14   Government filed, the declaration of Thomas Kurland, an associate of Patterson Belknap Webb &

15   Tyler LLP, the law firm representing the plaintiffs in the civil case, did not provide evidence of

16   notice with respect to the April 25, 2013 deposition of Fadi Attiq.  ECF No. 301 ¶ 3.  Therefore,

17   the statements from that deposition are inadmissible against the Ramirez defendants.

18   The Court now discusses whether the other statements the Government seeks to introduce

19   are admissible under the Confrontation Clause and exceptions to the rule against hearsay.

20   **B.      Confrontation Clause**

21   The Confrontation Clause of the Sixth Amendment provides that, in criminal cases, the

22   accused has the right to "be confronted with witnesses against him."  U.S. Const. amend. VI.  "A

23   primary interest secured by [the Confrontation Clause] is the right of cross-examination."  *Davis v.*

24   *Alaska*, 415 U.S. 308, 315–16 (1974).  However, "the Confrontation Clause guarantees only 'an

25   opportunity for effective cross-examination, not cross-examination that is effective in whatever

26   way, and to whatever extent, the defense might wish.'"  *United States v. Owens*, 484 U.S. 554, 559

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

10

United States District Court
Northern District of California

1    (1988) (emphasis in original) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)).

2        The Confrontation Clause applies to all "testimonial" statements.  *Crawford v.*

3    *Washington*, 541 U.S. 36, 50–51 (2004).  "Testimony . . . is typically a solemn declaration or

4    affirmation made for the purpose of establishing or proving some fact."  *Id.* at 51 (citations and

5    quotation marks omitted).  The Confrontation Clause applies not only to in-court testimony but

6    also to out-of-court statements introduced at trial to prove the truth of the matter asserted, i.e.,

7    "testimonial hearsay," regardless of the admissibility of the statements under state laws of

8    evidence.  *Id.* at 50–51; *Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The *nonhearsay* aspect of

9    [the] confession . . . raises no Confrontation Clause concerns.").  Out-of-court statements by

10   witnesses that are testimonial hearsay are barred under the Confrontation Clause unless: (1) the

11   witnesses are unavailable, and (2) Defendants had a prior opportunity to cross-examine the

12   witnesses.  *Id.* at 59.  However, case law is clear that "when the declarant appears for cross-

13   examination at trial, the Confrontation Clause places no constraints at all on the use of his prior

14   testimonial statements."  *Id.* at 59 n.9 (citing *California v. Green*, 399 U.S. 149, 162 (1970)).

15       Here, the Government concedes that the statements it seeks to introduce are testimony.

16   Gov't Resp. at 24.  Additionally, because the Government seeks to introduce the statements to

17   prove the truth of the matter asserted and the statements were made out of court, the statements are

18   also hearsay.  *See Street*, 471 U.S. at 414 (applying Confrontation Clause only to those portions of

19   a statement offered to prove the truth of the matter asserted).  Thus, the statements here are

20   "testimonial hearsay" as specified in *Crawford*.  In addition, for the purposes of resolving the

21   present motions, the Court assumes that the deponents are unavailable because each of the

22   deponents has the Fifth Amendment right to not testify at trial.  U.S. Const. amend. V.

23       However, the Court notes that proof of unavailability will be required at trial and, if such

24   proof is not available, the statements made by that deponent will not be admissible under the

25   Government's current theory.  *United States v. Matus-Zayas*, 655 F.3d 1092, 1102 (9th Cir. 2011)

26   ("[T]he district court should have followed our well-established precedent and required the

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

11

1    government to place on the record some evidence of the continued unavailability of the material

2    witnesses.").  The Court will address the unavailability requirement more fully in a later order.

3    However, in the interim, the Government must subpoena the deponents.

4            Although there is no dispute that the deposition statements are testimonial hearsay, the

5    parties disagree with respect to whether Defendants had a "prior opportunity for cross-

6    examination." *Crawford*, 541 U.S. at 68.  Here, the Government argues that Defendants had a

7    prior opportunity to cross-examine the declarants during the depositions because (1) all

8    Defendants received notice of the depositions, (2) all Defendants were represented by counsel, and

9    (3) all Defendants had the opportunity, and sometimes did, attend the depositions and cross-

10   examine the deponents.  Gov't Resp. at 24–26.  Defendants respond that (1) Defendants had no

11   notice of criminal charges when the deponents were deposed, (2) Defendants' motives were

12   different at the civil depositions because, allegedly, Defendants were seeking settlement and

13   knowledge and intent were not at issue in the civil cases, and (3) Defendants were represented by

14   joint counsel without providing a conflict waiver.  Shayota Supp. at 2–3; Ramirez Supp. at 2–3.

15           First, the Court addresses whether the procedures in place for the depositions provided an

16   opportunity to cross-examine the deponents.  Second, the Court discusses whether Defendants'

17   motives during the civil depositions preclude the statements' admission under the Confrontation

18   Clause.  Third, the Court addresses whether the presence of joint counsel affects the Confrontation

19   Clause analysis.

20                    **1.      Procedures Providing an Opportunity for Cross-Examination**

21           We first look to whether the procedures surrounding the prior testimony provided an

22   adequate opportunity for cross-examination.  In *California v. Green*, the United States Supreme

23   Court found preliminary hearing testimony admissible based on the presence of certain procedural

24   protections at that hearing: the declarant was under oath, the defendant was represented by

25   counsel, there was an opportunity for cross-examination, and the proceeding was held in a setting

26   designed to provide "a judicial record of the hearings." *Green*, 399 U.S. at 165.  In contrast, in

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

12

United States District Court
Northern District of California

1    *State v. Lopez*, 974 So. 2d 340 (Fla. 2008), the Florida Supreme Court held that discovery

2    depositions under Florida Rule of Criminal Procedure 3.220(h) did not satisfy the Confrontation

3    Clause because such depositions are "not designed as an opportunity to engage in adversarial

4    testing of the evidence against the defendant" and the "defendant is not entitled to be present

5    during a discovery deposition." *Id.* at 347.

6          Courts regularly admit deposition testimony.  In *United States v. Cannon*, 539 F.3d 601

7    (7th Cir. 2008), for example, the Seventh Circuit held that depositions taken under Rule 15 of the

8    Federal Rules of Criminal Procedure may be admitted.  *Id.* at 604 ("[W]e see no reason, post-

9    *Crawford,* to question the constitutionality of admitting fully cross-examined testimony preserved

10   by a properly conducted Rule 15 deposition.").  Courts similarly have found prior civil depositions

11   to satisfy the Confrontation Clause where the deposition procedures provided an opportunity to

12   cross-examine the deponent.  *See United States v. Paling*, 580 F. App'x 144, 148 (3d Cir. 2014)

13   (finding prior civil deposition admissible under the Confrontation Clause and under Federal Rule

14   of Evidence 804(b)(1)); *Osio v. Taylor*, 2010 WL 3747741, at *2–5 (C.D. Cal. Aug. 17, 2010),

15   *report and recommendation adopted*, 2010 WL 3747720 (C.D. Cal. Sept. 23, 2010) ("It is clear

16   that during the deposition in the civil case Petitioner's counsel questioned Waters to uncover the

17   basis for her claim that Petitioner had stolen the money.  This is all the Constitution requires, i.e.,

18   that the defendant have the opportunity to confront and cross-examine the witness.").  However, in

19   the cases where deposition testimony has been admitted, the defendant has been provided notice of

20   that deposition.  *See, e.g.*, *id.* (noting that the habeas petitioner had notice of the deposition);

21   *United States v. Williams*, 116 F. App'x 890, 891 (9th Cir. 2004) (finding no error in admitting

22   deposition taken under Rule 15(a) even though the defendant did not attend the deposition because

23   defendant had been provided notice).

24         In addition, "[o]nce the opportunity to cross-examine has been accorded, the confrontation

25   requirement is fulfilled. . . . The actual use then made of the opportunity becomes a matter of

26   defense strategy, and deliberate trial tactics do not ordinarily exact constitutional protection."

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

13

1    *Phillips v. Wyrick*, 558 F.2d 489, 496 (8th Cir. 1977). "Several courts have therefore admitted the

2    transcript of a witness's testimony from a preliminary hearing even though the witness was subject

3    to a less searching cross-examination than would have been the case at trial." *United States v.*

4    *Feldman*, 761 F.2d 380, 383 (7th Cir. 1985); *see also United States v. Sines*, 761 F.2d 1434, 1441

5    (9th Cir. 1985) (finding no Confrontation Clause violation caused by the admission of testimony

6    from a criminal deposition that the defendant did not attend because the defendant "was given the

7    opportunity to attend [the deponent's] deposition, and chose not to attend").

8         Here, the Court first discusses whether the procedures for the depositions, as a general

9    matter, provided an adequate opportunity for cross-examination, and then discusses whether those

10   procedures provided such an opportunity to each Defendant. The prior civil depositions were

11   performed as a part of the pre-consolidation *Ultimate* Action in the Eastern District of New York

12   and the pre-consolidation *Pittsburgh* Action in the Northern District of California. Although the

13   depositions were taken on an expedited basis, *see* Expedited Discovery Order, E.D.N.Y. Case No.

14   1:12-cv-05354-KAM-ST, ECF No. 10; Expedited Discovery Order, N.D. Cal. Case No. 3:12-CV-

15   05523-WHA, ECF No. 18, the courts in the *Ultimate* Action and the *Pittsburgh* Action did not

16   otherwise eliminate Federal Rule of Civil Procedure 30, which governs depositions. Under

17   Federal Rule of Civil Procedure 30, "[a] party who wants to depose a person by oral questions

18   must give reasonable written notice to every other party" and "[t]he examination and cross-

19   examination of a deponent proceed as they would at trial." Fed. R. Civ. P. 30(b)(1), (c)(1).

20   Additionally, depositions must be recorded or transcribed. *Id.* 30(b)(3). Therefore, much as in

21   *Green*, the proceedings were held in a context where the parties had an opportunity to cross-

22   examine the deponent and a record was created of the proceedings. *Green*, 399 U.S. at 165

23   (allowing preliminary hearing testimony partly because the hearing at issue provided an

24   opportunity for cross-examination and there was a "judicial record of the hearings").

25        The case on which Defendants primarily rely, *United States v. W.R. Grace*, 455 F. Supp.

26   2d 1199 (D. Mont. 2006), does not require excluding the statements. There, a district court in the

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

United States District Court
Northern District of California

District of Montana, under *Crawford*, excluded prior statements made in civil depositions by alleged co-conspirators. *Id.* at 1202–03. The *W.R. Grace* court found that statements made in those depositions were testimony under *Crawford* and, therefore, excludable. *Id.* at 1202. However, the *W.R. Grace* holding was premised on a finding that "none of the Defendants now standing trial had the right to be present and to cross-examine the witness at these prior proceedings." *Id.* at 1203. Here, in contrast, the Shayota defendants and the Ramirez defendants were parties to the original civil suits and had the right to attend and ask questions of their alleged co-conspirators in the depositions.[3]

Additionally, Defendants do not argue that they were unable to cross-examine the deponents under the deposition procedures. In fact, counsel for Defendants asked questions at multiple depositions. Gov't Supp. at 2–3; Shayota Supp. Resp. Ex. A; Ramirez Supp. Resp. Ex. A. Moreover, although Defendants themselves did not attend each deposition, and Defendants' lawyers did not ask questions at every deposition, Defendants were still provided the opportunity to cross-examine. *See Phillips*, 558 F.2d at 496 ("Once the opportunity to cross-examine has been accorded, the confrontation requirement is fulfilled."); *Sines*, 761 F.2d at 1441 (refusing to find Confrontation Clause violation where the defendant chose not to attend the deposition).

However, in cases where depositions have been admitted, the defendant has received notice of the deposition. *See Osio*, 2010 WL 3747741, at *3 (noting that deposition testimony was

---

[3] With the exception of the November 5, 2012 deposition of Kevin Attiq in the *Pittsburgh* Action and the November 27, 2012 deposition of Walid Jamil in the *Ultimate* Action, discussed below, the Ramirez and Shayota defendants do not dispute that they had been sued and appeared in the *Ultimate* Action and the *Pittsburgh* Action before the depositions in each of those actions took place. The Ramirez and Shayota defendants had all appeared in the *Ultimate* Action by November 30, 2012, *see supra* footnote 1, which was before the dates of the remaining depositions in the *Ultimate* Action: the December 3, 2012 deposition of Mario Ramirez, the December 5, 2012 deposition of Joseph Shayota, the December 6, 2012 deposition of Adriana Shayota, the December 10, 2012 deposition of Leslie Roman, the June 19, 2013 deposition of Camilo Ramirez, and the October 30, 2013 deposition of Walid Jamil. Additionally, the Ramirez and Shayota defendants had all appeared in the *Pittsburgh* Action by the end of March 2013, *see* footnote 1, *supra*, which was before the dates of the remaining depositions in the *Pittsburgh* Action: the April 25, 2013 deposition of Fadi Attiq, the September 16, 2013 deposition of Walid Jamil, the October 11, 2013 deposition of Kevin Attiq, the October 23, 2013 deposition of Mario Ramirez, and the October 30, 2013 deposition of Walid Jamil.

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

admissible partly because the petitioner received notice of the deposition).

At the October 12, 2016 hearing on the instant motions, the Government agreed that the Shayota defendants and the Ramirez defendants did not receive notice of the November 5, 2012 deposition of Kevin Attiq in the *Pittsburgh* Action because they were not yet party to either the *Pittsburgh* Action or the *Ultimate* Action. The Government also agreed that Mario and Camilo Ramirez and Adriana Shayota did not receive notice of the November 27, 2012 deposition of Walid Jamil in the *Ultimate* Action. Thus, at the hearing, the Court GRANTED Defendants' motion to exclude the November 5, 2012 deposition of Kevin Attiq with respect to the Ramirez defendants and the Shayota defendants. The Court also GRANTED Defendants' motion to exclude the November 27, 2012 deposition of Walid Jamil as to the Ramirez defendants and Adriana Shayota, but did not exclude the statements from that deposition with respect to Joseph Shayota. Joseph Shayota does not dispute that he was a party to the *Ultimate* Action before the November 27, 2012 deposition of Walid Jamil in the *Ultimate* Action occurred and concedes that he received notice and was represented by counsel at the deposition. Shayota Supp. Ex. A; E.D.N.Y. Case No. 1:12-CV-05354-KAM-ST, ECF Nos. 16–17 (indicating Joseph Shayota was issued a summons on November 1, 2012), 147 (November 26, 2012 notice of appearance by Joseph Shayota's counsel).

Additionally, the Shayota defendants concede that they received notice of and were represented by counsel at the remaining depositions. Shayota Supp. Ex. A. However, the Ramirez defendants assert that they are unsure if they received notice of all the depositions. Ramirez Supp. Ex. A. As a result, at the October 12, 2016 hearing on the instant motions, the Court ordered the Government to provide evidence that the Ramirez defendants received notice of the depositions. ECF No. 300. On October 13, 2016, the Government filed a letter to which it attached a declaration of Thomas Kurland, an associate of Patterson Belknap Webb & Tyler LLP, the law firm representing the plaintiffs in the civil case. ECF No. 301. In the declaration, Kurland declares that the law firm representing Mario and Camilo Ramirez during the civil proceeding was

16

United States District Court
Northern District of California

United States District Court
Northern District of California

1    sent notice of the December 5, 2012 deposition of Joseph Shayota, the December 6, 2012

2    Deposition of Adriana Shayota, the December 10, 2012 deposition of Leslie Roman, the

3    September 16, 2013 deposition of Walid Jamil, and the October 11, 2013 deposition of Kevin

4    Attiq.  ECF No. 301 at 2.  As proof of the statements in the declaration, Kurland attaches notices

5    of the depositions as well as emails and proofs of service showing that these notices were sent to

6    counsel for Mario Ramirez and Camilo Ramirez.  *Id.*  The Court finds that the Government has

7    provided sufficient evidence that the Ramirez defendants received notice of the depositions listed

8    in the declaration.  Therefore, the Court DENIES the Ramirez defendants' motion to exclude the

9    depositions listed in the declaration on grounds of lack of notice.

10            However, the Government has failed to provide any evidence of notice to the Ramirez

11   defendants for the April 25, 2013 deposition of Fadi Attiq.  Therefore, the Court GRANTS the

12   Ramirez defendants' motion to exclude the April 25, 2013 deposition of Fadi Attiq.

13                    **2.       Similarity of Motives at Civil Depositions and at Criminal Trial**

14            Second, Defendants argue that they had different motives at the civil depositions than they

15   would at a criminal trial because the claims were different at the civil depositions and Defendants

16   did not know that there would be criminal proceedings.  Courts interpreting United States

17   Supreme Court precedent have found that the Confrontation Clause does not require an analysis or

18   consideration of the potential motive or "need and incentive" to cross-examine.  For example, in

19   *Samayoa v. Ayers*, 649 F. Supp. 2d 1102 (S.D. Cal. 2009), a Southern District of California district

20   court held that "'similar motive' is a state evidentiary requirement, and not a requirement under

21   the Confrontation Clause.  The [United States] Supreme Court has refrained from conducting any

22   similar motive inquiry in their [sic] Sixth Amendment cases . . . ."  *Id.* at 1145; *see also United*

23   *States v. Hargrove*, 382 F. App'x 765, 778 (10th Cir. 2010) ("*Crawford* requires only that the

24   defendant have an opportunity to cross-examine the adverse witness at the prior proceeding—it

25   does not require that the defendant have a similar motive at the prior proceeding.  The prior motive

26   requirement comes from the Federal Rules of Evidence, not the Confrontation Clause.").

27                                                                    17

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

1    Similarly, in *Osio*, a Central District of California district court held that the varied levels of

2    motivation between a criminal and civil proceeding have no bearing on whether civil deposition

3    statements are admissible because "[t]he federal Constitution guarantees an opportunity for

4    effective cross-examination, not a cross-examination that is as effective as a defendant might

5    prefer." *Osio*, 2010 WL 3747741, at *5. Thus, the Defendants' arguments regarding motive do

6    not affect the Confrontation Clause analysis.

7                              **3.      Conflicts of Counsel**

8           Third, Defendants argue that they did not have an adequate opportunity for cross

9    examination because they had joint counsel during the civil depositions, which may have created a

10   conflict of interest. The Government agrees that some level of representation is necessary under

11   the Confrontation Clause. Gov't Resp. at 25 ("When analyzing whether a defendant has been

12   provided an adequate opportunity to cross-examine a declarant the Supreme Court has looked at

13   whether the defendant was represented by counsel, whether the opportunity to examine was on

14   record, and whether the declarant was under oath at the time." (citing *Green*, 399 U.S. at 165)).

15          In *United States v. Waters*, 2014 WL 65888 (D. Minn. Jan. 8, 2014), a district court in the

16   District of Minnnesota held that the defendant did not have a prior opportunity for cross-

17   examination at a civil deposition because he did not have counsel at the time. *Id.* at *4–5. The

18   district court cited to *Pointer v. Texas*, 380 U.S. 400 (1965), which held that, for statements made

19   at the preliminary hearing to be admissible at trial, the defendant must have had counsel during the

20   preliminary hearing. *Id.* at 401–02. However, the *Waters* court stressed that its holding was based

21   on the premise that "the actual lack of counsel . . . prevented a meaningful confrontation." *Waters*,

22   2014 WL 65888, at *5. In the cases cited above, where prior deposition testimony has been

23   admitted, the defendant had representation during the prior testimony. *See, e.g.*, *Paling*, 580 F.

24   App'x at 148 (noting presence of counsel at prior civil deposition).

25          The Court is unaware of any federal courts addressing circumstances where a defendant

26   seeks to preclude the admission of former civil deposition testimony based on a conflict of interest

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

18

at that deposition.  However, in *Holloway v. Arkansas*, 435 U.S. 475 (1978), the United States Supreme Court noted that a conflict of interest may "effectively seal[] [an attorney's] lips on crucial matters."  *Id.* at 490 (finding that a conflict may "preclude an agreement [for one codefendant] to testify for the prosecution" or "prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.").

Some state courts have addressed situations analogous to the instant case with respect to prior trial or preliminary hearing testimony.  In *Foster v. State*, 436 So. 2d 56 (Fla. 1983), the defendant's first trial for first degree felony murder was overturned because the trial court had appointed the same attorney to represent both the defendant and a codefendant who subsequently became a witness for the state.  *Id.* at 57.  At the defendant's second trial, the government introduced testimony made at the first trial by a witness who died before the second trial.  *Id.*  The *Foster* Court did not overturn the conviction because it did "not appear from the record that this conflict of interest in any way impaired or affected the adequacy of [the defendant's] attorney's cross-examination" of the deceased witness.  *Id.*; *Nabbefeld v. State*, 83 Wis. 2d 515, 524–25 (Wis. 1978) (holding that former testimony may be inadmissible where "counsel was allegedly incompetent or was confronted with an actual or potential conflict of interest which inhibited him from carrying out a meaningful cross-examination although full opportunity was afforded").

Under these precedents, this Court must first evaluate whether a conflict of interest existed and then determine whether that conflict limited counsel's representation of Defendants such that counsel was unable to engage in "meaningful confrontation."  *Waters*, 2014 WL 65888, at *5 (finding no meaningful cross-examination where the defendant did not have counsel during the deposition and the defendant was a lay-person unfamiliar with the law); *see Foster*, 436 So. 2d at 57 (because a conflict of interest existed, looked to adequacy of cross-examination); *Nabbefeld*, 83 Wis. 2d at 524 (only looking to the adequacy of the cross-examination under "exceptional"

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1    circumstances, that is, where a potential or actual conflict of interest existed); *cf. United States v.*

2    *Allen*, 831 F.2d 1487, 1494–95 (9th Cir. 1987) (finding that, on appellate review of multiple

3    representation, a defendant must show the existence of an actual conflict of interest and an effect

4    on the adequacy of the representation).

5            During the civil depositions at issue in the instant motions, the parties were represented in

6    the following manner.  Mario Ramirez and Camilo Ramirez, Mario's son, shared joint

7    representation with three corporate entities, MCR Printing & Packaging, MCR Innovations, and

8    NaftaUnited.  Ramirez Supp. at 2.  MCR Printing & Packaging was 100% owned by Mario

9    Ramirez.  NaftaUnited was 100% owned by Mario Ramirez.  MCR Innovations was 47% owned

10   by Mario Ramirez, 11% owned by Camilo Ramirez, and 42% owned by Walid and Raid Jamil.

11   Additionally, Camilo Ramirez served as an officer of each of these companies.  Camilo was the

12   Chief Operations Officer ("COO") of MCR Innovations, the Secretary and agent for service of

13   process for NaftaUnited, and after January of 2013, President of MCR Printing and Packaging.

14           With respect to the Shayota defendants, Adriana Shayota and Joseph Shayota, husband and

15   wife, were jointly represented with Tradeways International, Inc. dba Baja Exporting, a company

16   that was 100% owned by Adriana Shayota at the time of the civil depositions.  Shayota Supp. at 2.

17           The Court first addresses the admissibility of the depositions of Defendants who shared

18   counsel during the civil depositions against the co-defendants with whom they shared counsel at

19   the time of the depositions.  The Court then addresses more generally whether the joint

20   representation of Defendants in the civil suits renders the deposition statements inadmissible.

21           First, the Court addresses whether Adriana Shayota's deposition statements can be

22   introduced against Joseph Shayota, and vice versa, and whether Mario Ramirez's deposition

23   statements can be introduced against Camilo Ramirez, and vice versa.  The Court finds that these

24   statements are inadmissible against these particular defendants because the use of joint counsel

25   prevented a "meaningful confrontation."  *Waters*, 2014 WL 65888, at *5.  For example, it is

26   unclear how joint counsel for Adriana Shayota and Joseph Shayota would be able to

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

1   simultaneously defend the deposition of Adriana Shayota and cross-examine her regarding

2   statements incriminating Joseph Shayota, as the duty of the attorneys to each client would have

3   "effectively sealed [their] lips."  *Holloway*, 435 U.S. at 490; *cf. United States v. Mavrick,* 601 F.2d

4   921, 931 (7th Cir. 1979) ("An actual conflict would arise where defense counsel is unable to cross-

5   examine a prosecution witness effectively because the attorney also represented the witness.").

6        Therefore, the Court GRANTS the Shayota defendants' motion in the following manner:

7   the December 6, 2012 deposition of Adriana Shayota is not admissible against Joseph Shayota and

8   the December 5, 2012 deposition of Joseph Shayota is not admissible against Adriana Shayota.

9   Similarly, the Court GRANTS the Ramirez defendants' motion in the following manner: the

10  December 3, 2012 deposition of Mario Ramirez and the October 23, 2013 deposition of Mario

11  Ramirez are not admissible against Camilo Ramirez and the June 19, 2013 deposition of Camilo

12  Ramirez is not admissible against Mario Ramirez.  The Court notes that the Shayota defendants

13  are being tried jointly in one trial and that the Ramirez defendants are being tried jointly in another

14  trial.  To the extent the Government seeks to introduce an admission or statement of a party

15  opponent that references a co-defendant at trial, the Government must redact those statements in

16  accordance with *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny.

17       Second, Defendants also challenge the admission of the remaining deposition statements

18  based on alleged conflicts of interest.  With respect to the Ramirez defendants, Defendants have

19  failed, after three rounds of briefing and a hearing, to identify any actual conflict of interest at the

20  civil depositions.  At the October 12, 2016 hearing on the instant motions, the Court ordered the

21  Ramirez defendants to specify the conflicts of interest that rendered the deposition statements

22  inadmissible against the Ramirez defendants under the Confrontation Clause.  It is undisputed that

23  civil counsel jointly represented Mario Ramirez, Camilo Ramirez, MCR Printing & Packaging,

24  MCR Innovations, and NaftaUnited at the time of the depositions.  At the hearing, counsel for the

25  Ramirez defendants made only general statements that corporations and individuals have different

26  interests, but did not identify any actual conflict of interest between the parties represented at the

27

28  Case No. 15-CR-00264-LHK-1
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
    GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

civil depositions.  In three rounds of briefing on the instant motion, the Ramirez defendants do not identify any actual conflict of interest caused by civil counsel's joint representation, but solely state that "conflicted counsel is akin to no counsel at all."  Ramirez Conflict Br. at 4.  The Ramirez defendants have failed to cite, even on the urging of the Court, any actual conflict of interest and, thus, cannot show that joint counsel's lips were "effectively sealed" during cross-examination. *Holloway v. Arkansas*, 435 U.S. at 490.  Therefore, the Court DENIES the Ramirez defendants' motion to exclude co-conspirator statements based on the alleged conflict of interest.

With respect to the Shayota defendants, Defendants argue that a specific conflict of interest existed based on Joseph Shayota's extramarital affair with Tyneisha Evans and his desire to hide the affair from his wife, Adriana Shayota.  Shayota Conflict Br. at 2.  During the civil proceedings, Joseph Shayota, Adriana Shayota, and Tradeways International, Inc. dba Baja Exporting were represented by joint counsel.  Tyneisha Evans received, at the request of Joseph Shayota, $75,000 from Midwest Wholesale Distributors, Inc., a company that employed Walid Jamil, Raid Jamil, and Justin Shayota, and $71,339 from Dan Dee Company, a company owned and operated by Kevin Attiq and Fadi Attiq.  *Id.*  The Shayota defendants argue and provide a declaration from Adriana Shayota's current attorney that Joseph Shayota instructed joint civil counsel, David Greeley, not to inquire into certain topics involving the transfer of funds to and from Tyneisha Evans because Joseph Shayota did not want his extramarital affair to be revealed or explored in detail.  *Id.*; ECF No. 307-2, Decl. of Joseph M. McMullen ("McMullen Decl.") ¶ 2.  The Shayota defendants argue that, as a result, cross-examination was rendered inadequate with respect to deposition statements concerning money transfers between Midwest Wholesale Distributors, Inc., Dan Dee Company, and Baja Exporting.

As an initial matter, although the Shayota defendants frame their conflict argument as requiring the exclusion of the evidence against both Joseph and Adriana Shayota, the conflict can potentially cause the exclusion of evidence against only Adriana Shayota.  Joseph Shayota allegedly chose to limit the cross-examination by asking Greeley not to ask questions about

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1    Tyneisha Evans and therefore cannot seek exclusion based on his own deliberate tactics.  *See*

2    *Phillips*, 558 F.2d at 496 ("The actual use then made of the opportunity [to cross-examine]

3    becomes a matter of defense strategy, and deliberate trial tactics do not ordinarily exact

4    constitutional protection.").

5            As discussed above, for a conflict of interest to require the exclusion of former testimony,

6    there must have been an actual or potential conflict that prevented an adequate or "meaningful

7    confrontation" of the deponent.  *Waters*, 2014 WL 65888, at *5; *cf. United States v. Allen*, 831

8    F.2d 1487, 1494–95 (9th Cir. 1987) (finding that, on appellate review of an alleged conflict of

9    interest involving multiple representation, a defendant must show the existence of an actual

10   conflict of interest and an effect on the adequacy of the representation).  Here, if the McMullen

11   declaration is true, an actual conflict of interest existed between Adriana Shayota and Joseph

12   Shayota.  An instruction not to cross-examine effectively from Joseph Shayota would have

13   required Greeley to choose between his duty as counsel to Adriana Shayota and Joseph Shayota's

14   explicit instructions.

15           However, the Court cannot grant the Shayota defendants' motion in the instant Order.

16   First, the evidence counsel provides regarding the conflict is in the form of a declaration from

17   McMullen, Adriana Shayota's counsel in the instant criminal case who had no involvement in the

18   civil case and has no personal knowledge of the alleged arrangement between Greeley and Joseph

19   Shayota.[4]  *Cf.* Fed. R. Evid. 602 (only allowing testimony of witnesses with personal knowledge).

20   Additional reliable evidence of this conflict is necessary.

21           Second, the second part of the test described above—an effect on the adequacy of the

22   cross-examination—has not been demonstrated.  The Shayota defendants do not provide evidence

23   that Greeley actually followed Joseph Shayota's instructions, in which depositions Greeley limited

24

25   _____

26   [4] The Shayota defendants have not provided a declaration from Greeley.  The Court notes that
     Greeley worked for Seltzer Caplan McMahon Vitek during the civil depositions, which is the
27   same law firm where Joseph Shayota's counsel in the instant criminal case, Gregory Vega, is
     employed.

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    his cross-examination, or to what extent the cross-examination was limited.  Furthermore, the

2    Shayota defendants claim that all testimony regarding the transfer of money between Baja

3    Exporting, Dan Dee Company, and Midwest Wholesale Distributors, Inc. should be excluded even

4    though only a small portion of those transactions involved Tyneisha Evans.

5          Finally, at least with respect to Walid Jamil, who was involved with Midwest Wholesale

6    Distributors, Inc., Greeley asked Walid Jamil at least some questions about Tyneisha Evans and

7    her role in the scheme.  *See, e.g.*, ECF No. 274-4, October 30, 2013 Deposition of Walid Jamil

8    ("Q. How much money did you deposit to Ty Evans's personal account?  A. I don't recall, but I'm

9    sure you can subpoena her account, there's probably over a hundred, $150,000.  I don't recall.").

10   Therefore, the Court DENIES the Shayota defendants' motion with respect to statements

11   potentially affected by the Tyneisha Evans conflict of interest.

12          However, the Court does so with leave to amend.  The following procedures shall be used

13   to determine whether statements will be excluded as to Adriana Shayota based on a conflict of

14   interest.  By Thursday, October 20, 2016, at 5:00 p.m., the Shayota defendants should file reliable

15   evidence that a conflict actually existed, identify all of the co-conspirator statements allegedly

16   affected by the conflict of interest, that is, those statements involving transactions between Baja

17   Exporting, Midwest Wholesale Distributors, Inc., and Dan Dee Company, explain why those

18   statements show the conflict of interest, and, using examples, explain why the cross-examination

19   on these topics was inadequate.  By Friday, October 21, 2016, at 5:00 p.m., the Government shall

20   respond to the Shayota defendants' arguments, file the text of all of the cross-examinations

21   performed by Greeley, and provide page citations to all of the questions in the cross-examinations

22   that involve Tyneisha Evans.

23          The Court recognizes that the above timeframe is short.  However, the Court has provided

24   the Shayota defendants ample opportunity to provide the requested information already.  On

25   August 19, 2016, the Government filed its notice of co-conspirator statements.  ECF No. 206.  On

26   September 21, 2016, one month later, the Shayota defendants filed their motion to exclude the

27

28
                                                24

statements the Government seeks to introduce, but made no mention of conflicts of interest. ECF No. 269. The Court then ordered a second round of briefing on the issue of co-conspirator statements. ECF No. 287. On October 7, 2016, in their supplemental brief, the Shayota defendants raised the conflict of interest issue for the first time in a single sentence without identifying a conflict of interest or providing any evidence of an actual conflict of interest. Shayota Supp. at 2–3. The Court then ordered a third round of briefing on the conflict of interest issue. ECF No. 300. On October 13, 2016, in the third brief on co-conspirator statements, the Shayota defendants identified for the first time the potential conflict of interest involving Joseph Shayota's relationship with Tyneisha Evans, but failed to provide sufficient evidence of the existence of the conflict of interest. Shayota Conflict Br. at 2–4. The Shayota defendants, quite simply, should already have fully addressed this issue.

The Court now addresses whether the rule against hearsay precludes the admission of those statements not barred by the Confrontation Clause.

### C.      Rule Against Hearsay

Federal Rule of Evidence 802 excludes hearsay evidence unless an exception to the rule against hearsay applies. Federal Rule of Evidence 801(c) defines hearsay to include statements the "declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statements." The Government seeks to introduce the prior co-conspirator statements to prove the truth of the matter asserted. Therefore, these deposition statements are inadmissible unless a hearsay exception applies. The Government argues that the former testimony exception, the co-conspirator statement exception, and the statement against interest exception apply. The Court addresses each exception in turn.

### 1.      Former Testimony Exception

Under Federal Rule of Evidence 804(b)(1), testimonial hearsay is admissible if (1) the declarant is unavailable at trial; (2) the statements were "given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one"; and (3) the

25

United States District Court
Northern District of California

testimony is "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Civ. P. 804(b)(1).

As discussed above, for purposes of ruling on the instant motion, the Court assumes that the deponents will invoke their Fifth Amendment right not to testify and the Government concedes that the statements at issue are testimony.  In addition, the Court found above that Defendants had an opportunity to cross-examine the deponents, so long as certain requirements regarding notice and counsel were satisfied.  Therefore, the Court solely must address whether Defendants had similar motive to develop the testimony at the depositions as they would have at trial.

The Ninth Circuit has "not developed a bright-line test for determining similarity of motive" because the analysis is "inherently a factual inquiry." *United States v. Duenas*, 691 F.3d 1070, 1086–89 (9th Cir. 2012) (citing *United States v. Salerno*, 505 U.S. 317, 326 (1992)).  As part of this factual inquiry, the Ninth Circuit looks to whether the "fundamental objective" of the party against whom the evidence is being offered is the same at both proceedings.  *Id.* at 1089 (citing *United States v. McFall*, 558 F.3d 951 (9th Cir. 2009)).  This approach contrasts with the First and Second Circuits, which take a more "fine-grained" approach by looking to "whether a party 't[ook] the same side on the same issue'" and whether the party "had the same degree of interest to prevail at each proceeding." *Id.* (citing *United States v. DiNapoli*, 8 F.3d 909 (2d Cir. 1993) (en banc), and *United States v. Omar*, 104 F.3d 519, 522–24 (1st Cir. 1997)).

In *United States v. McFall*, the Ninth Circuit applied the fundamental objective approach and found that a prosecutor had similar motives to develop the exculpatory testimony of a witness at a grand jury proceeding and at trial.  *McFall*, 558 F.3d at 955.  This finding was made despite the fact that the prosecutor's interest in developing the testimony was "likely not as intense as it would have been at trial." *Id.* at 963.

In contrast, in *Duenas*, the Ninth Circuit found that the fundamental objectives of the defendants were different at a *Miranda* suppression hearing than at trial.  *Duenas*, 691 F.3d at 1089.  There, the defendant had provided incriminating statements to an officer.  *Id.* at 1076–77.

26

1    At the suppression hearing, the objective was to "elicit testimony to prove that [the defendant's]

2    statements to [the officer] were involuntary and obtained in violation of *Miranda*," while the issue

3    at trial was "whether the evidence proved [the defendant's] guilt beyond a reasonable doubt." *Id.*

4    at 1088, 1090.  The Ninth Circuit held these two fundamental objectives to be different.

5            Here, the Government argues that Defendants had a similar motive to cross-examine the

6    deponents at the civil depositions as they would have at the criminal trial.  The Government claims

7    that the "defendants spent the majority of their time shifting the blame from themselves onto their

8    co-conspirators" and that the "motive for each defendant during those proceedings was to discredit

9    the inculpatory statements being made by their co-conspirator declarants."  Gov't Supp. at 3.

10           The Court agrees with the Government that Defendants had the same "fundamental

11   objective" to develop the testimony of deponents in the civil deposition as Defendants would have

12   at trial.  In the civil proceedings, Defendants faced liability for having sold millions of bottles of

13   counterfeit 5-Hour ENERGY.  Deposition of Walid Jamil, Nov. 27, 2012 at 35 (noting that they

14   sold 4 million bottles of 5-Hour ENERGY).  As a result, each Defendant was potentially liable for

15   millions of dollars of damages.  *See* Order on Summary Judgment, E.D.N.Y. Case No. 1:12-CV-

16   05354-KAM-ST, ECF No. 886 at 50–51 ("Civil Summary Judgment") ("Statutory damages for

17   the non-willful infringement of registered trademarks are available from $1,000 to $200,000 per

18   counterfeit mark per type of good," but "[i]f willful infringement [of the Lanham Act] is

19   established, the maximum statutory damage award against each defendant is $10 million ($2

20   million maximum statutory award times five infringed 5-Hour ENERGY Marks).").

21           During the depositions, the deponents did not contest that they were involved in selling

22   counterfeit 5-Hour ENERGY, but instead asserted that they did not know at the time that the 5-

23   Hour ENERGY was counterfeit and that other co-conspirators had represented that their activities

24   had been authorized by the real makers of 5-Hour ENERGY.  *See, e.g.*, Deposition of Walid Jamil,

25   Nov. 27, 2012 at 18–35 (Walid Jamil providing information on how he replaced Spanish 5-Hour

26   ENERGY labels with English labels and stating that he thought Joseph Shayota had received

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1    permission from 5-Hour ENERGY to do this); Deposition of Joseph Shayota, Dec. 5, 2012, at

2    195–96 (Joseph Shayota stating that he thought Walid Jamil obtained the 5-Hour ENERGY bottles

3    "[d]irect from 5-Hours Energy Drink [sic]").  As noted above, Defendants faced increased liability

4    for having willfully counterfeited the 5-Hour ENERGY products.

5          In addition, many of the defendants had filed cross-claims against one another for

6    fraudulent misrepresentation.  *See, e.g.*, Answer and Cross-Claims, E.D.N.Y. Case No. 1:12-CV-

7    05354-KAM-ST, ECF No. 499 at 42–46 (Walid Jamil cross-claims brought against Baja

8    Exporting, Joe Shayota, and Adriana Shayota for fraudulent misrepresentation, innocent

9    misrepresentation, silent fraud, indemnification, and contribution); *Pittsburgh* Third-Party Compl.

10   ¶¶ 67–119 (Kevin Attiq's company bringing claims for fraudulent misrepresentation, tortious

11   interference with contract, tortious interference with prospective economic advantage, and

12   equitable indemnification, among others, against the Shayota defendants and the Ramirez

13   defendants).  Therefore, each Defendant had a motive to exculpate himself or herself through

14   cross-examination of the deponents.

15         Defendants would have a similar motive to cross-examine the deponents at trial.

16   Currently, Defendants are charged with conspiracy to traffic in counterfeit goods in violation of 18

17   U.S.C. § 2320(a) and conspiracy to commit criminal copyright infringement and to introduce

18   misbranded food into interstate commerce in violation of 17 U.S.C. § 506, 18 U.S.C. § 2319, and

19   21 U.S.C. §§ 331 & 333.  Superseding Information ¶ 16–32.  Defendants note that the "critical

20   issues in this criminal case" are "knowledge and intent."  Shayota Supp. at 2.  Thus, as in the civil

21   depositions, a defendant such as Joseph Shayota, would be motivated to undermine testimony

22   tending to show that he knowingly was counterfeiting 5-Hour ENERGY.  In both the civil

23   depositions and at criminal trial, the "fundamental objective" is to undermine testimony indicating

24   that each defendant was the mastermind or knowing accomplice of the 5-Hour ENERGY

25   counterfeiting scheme.

26         Moreover, the Government seeks forfeiture of a money judgment in this case rather than

27

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

28

1    real property.  ECF No. 292 at 2 ("The government will not be seeking to forfeit property . . . .

2    [T]he government will be seeking a money judgment . . . .").  During a civil deposition, a

3    defendant would be motivated to minimize the amount owed to the plaintiff or to a third-party

4    plaintiff seeking damages for fraudulent misrepresentation or equitable indemnification during

5    cross-examination.  Given the forfeiture allegation, a similar motive would exist at the criminal

6    trial to minimize the amount owed.

7         The fact that the depositions the Government seeks to introduce arise from two separate

8    actions that were later consolidated, the New York *Ultimate* Action and the California *Pittsburgh*

9    Action, does not change the similarity of the motives.  First, Defendants do not argue that their

10   motives were different for depositions taken in the *Pittsburgh* Action from depositions taken in the

11   *Ultimate* Action.  Second, the plaintiffs, the makers of 5-Hour ENERGY, were identical in both

12   cases, meaning that the information revealed in the depositions for one case was usable in the

13   other.  *See Ultimate* Seventh Amended Compl. ¶ 128 (citing November 5, 2012 deposition of

14   Kevin Attiq in the *Pittsburgh* Action as part of the factual basis for the amended complaint in the

15   *Ultimate* Action).  Finally, the Shayota defendants and the Ramirez defendants were defendants in

16   the *Ultimate* Action and third-party defendants in the *Pittsburgh* action and in both cases were

17   accused of knowingly selling or enabling the sale of counterfeit 5-Hour ENERGY.  Thus, in both

18   actions, Defendants' motive during cross-examination would be to undermine and contradict any

19   statement that would place the blame for the counterfeiting operation on the cross-examining

20   defendant.

21        The sole case cited by Defendants in support of their position regarding motive, *United*

22   *States v. Feldman*, 761 F.2d 380, does not require a different result.  In *Feldman*, a Seventh Circuit

23   case, three defendants, Sanburg, Feldman, and Martenson, were sued by the Commodity Futures

24   Trading Commission in a civil enforcement action.  *Id.* at 382–33.  Prior to the deposition of

25   Sanburg, Sanburg agreed to testify for the Government.  *Id.*  However, neither Feldman nor

26   Martenson was aware that Sanburg had made such an agreement at the time of the testimony.  *Id.*

27

28
Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1   The *Feldman* court found that Sanburg's deposition testimony from the civil proceeding was

2   inadmissible at a later criminal trial against Feldman and Martenson because the motives were

3   insufficiently similar. *Id.* The *Feldman* court found the motives dissimilar because Feldman and

4   Martenson did not know that Sanburg was adverse to them at the deposition, there had been no

5   notice of criminal charges, Feldman and Martenson faced no personal liability from the

6   enforcement proceeding, and, as a result, Feldman and Martenson had chosen not to contest the

7   enforcement proceedings. *Id.* at 384–86.

8        The *Feldman* case does not control here. First, the *Feldman* court's analysis was based on

9   a four-factor "fine-grained" approach to similarity of motive that the Ninth Circuit rejected in

10  *McFall*. *Compare Feldman*, 761 F.2d at 385 (utilizing a four-factor test for motive: "(1) the type

11  of proceeding in which the testimony is given, (2) trial strategy, (3) the potential penalties or

12  financial stakes, and (4) the number of issues and parties"), *with McFall*, 558 F.3d at 963 (utilizing

13  the "fundamental objective" test). Second, the facts at issue here are completely different from

14  those in *Feldman*. Unlike Feldman and Martenson, Defendants faced significant personal liability

15  at the civil proceedings, eliminating concerns that there was no need or incentive to cross-examine

16  inculpatory statements. *See United States v. Burge*, 2009 WL 1108488, at *7 (N.D. Ill. April 23,

17  2009) (holding that potential liability for substantial damages created a need and incentive to

18  cross-examine with a similar motive to a criminal proceeding). Additionally, unlike Feldman and

19  Martenson, Defendants in the instant case actually disputed the claims in the civil proceedings.

20  Although Defendants argued that settlement was always the goal in the civil proceedings, the

21  Ramirez and Shayota defendants both sought to avoid liability in the *Ultimate* Action. E.D.N.Y.

22  Case No. 1:12-CV-05354-KAM-ST, ECF No. 384 ("Ramirez Answer"); *Id.* ECF No. 619

23  ("Shayota Motion to Dismiss"). Similarly, in the *Pittsburgh* Action, the Ramirez and Shayota

24  defendants disputed the third-party claims brought against them by Kevin Attiq's company. N.D.

25  Cal. Case No. 3:12-CV-05523-WHA, ECF No. 259 ("Ramirez Attiq Answer"); *Id.* ECF No. 273

26  ("Shayota Attiq Answer").

27

28
Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1    Defendants' other arguments against the similarity of motives do not alter the result.

2    Defendants argue that they did not have a similar motive at the civil depositions because (1)

3    knowledge and intent were not issues for liability under the Lanham Act and for copyright

4    infringement, (2) Defendants did not have notice of the criminal charges, and (3) Defendant hoped

5    to settle the civil case to minimize costs.  Shayota Supp. at 2–3; Ramirez Supp. at 2–3.

6    First, the Defendants' argument that knowledge and intent were not at issue in the civil

7    trial is incorrect.  In the *Ultimate* Action, the plaintiffs brought claims and sought remedies that

8    required knowledge and intent.  First, plaintiff sought statutory damages under the Lanham Act,

9    including damages for willful infringement.  Civil Summary Judgment at 50–51.  Second, the

10   plaintiffs brought claims under New York's common law unfair competition law, which requires

11   evidence of bad faith.  Civil Summary Judgment at 35 ("If use of counterfeits alone were enough

12   to establish liability—regardless of a defendant's intent or knowledge—unfair competition claims

13   under New York common law would be rendered indistinguishable from strict liability Lanham

14   Act claims.  Such a narrow standard is plainly at odds with the bad faith component of New

15   York's unfair competition common law.").  Finally, the plaintiffs requested punitive damages in

16   all of the operative complaints in the amount of $25 million, which would require a showing that

17   "defendant's conduct has constituted gross, wanton, or willful fraud or other morally culpable

18   conduct to an extreme degree."  *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 371 (2d Cir.

19   1988); ECF No. 1 ("Compl.") at 33.

20   Additionally, in the *Pittsburgh* Action, the Ramirez and Shayota defendants were accused

21   of intentional misrepresentations that caused Kevin Attiq's company to purchase and re-sell

22   counterfeit products.  *Pittsburgh* Third-Party Compl. ¶¶ 67–86.  To counter such claims, the

23   Ramirez and Shayota defendants would seek to show that that they had no knowledge that the

24   products were counterfeit during cross-examination.

25   Second, Defendants argue that they didn't have notice of criminal charges at the time of

26   the depositions and that the motivation for cross-examination at a civil trial is less than for a

27

28

United States District Court
Northern District of California

31

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

United States District Court
Northern District of California

1    criminal trial.  However, in the Ninth Circuit, the test is not whether the motivation is identical

2    during the prior testimony, but whether the defendant had the same fundamental objective in the

3    two proceedings.  *McFall*, 558 F.3d at 963 (finding the same fundamental objective for a

4    prosecutor in grand jury proceedings and at trial with respect to exculpatory witnesses).  In *United*

5    *States v. Sklena*, 692 F.3d 725 (7th Cir. 2012), the Seventh Circuit held that a defendant in a civil

6    enforcement proceeding had a "similar motive" to cross-examine a witness as in a later criminal

7    proceeding concerning the same underlying facts.  *Id.* at 732.  The Seventh Circuit held that "the

8    deterrent effect of a large civil penalty (like the one that the court ultimately imposed against

9    Sklena) can be similar to that of a criminal sentence." *Id.*; *see also Burge*, 2009 WL 1108488 at

10   *7 (holding that potential liability for substantial damages created a need and incentive to cross-

11   examine with a similar motive to a criminal proceeding).  Similarly, here, Defendants' potential

12   civil liability for willful infringement, which involved large monetary penalties, provided

13   Defendants a "fundamental objective" similar to their current motive to cross-examine witnesses

14   at trial.

15        Third, Defendants' settlement argument is not persuasive as to the depositions that

16   occurred before any settlement agreement took effect.  Before a settlement agreement was

17   finalized, Defendants would still be motivated to impeach deponents because (1) Defendants

18   would want to minimize their culpability to get the best settlement agreement possible, and (2)

19   would want a fallback position for trial should settlement not occur.  Indeed, as discussed above,

20   in the *Ultimate* Action and the *Pittsburgh* Action, the Shayota and Ramirez defendants both

21   opposed the plaintiffs' complaint and attempted to evade liability.  E.D.N.Y. Case No. 1:12-CV-

22   05354-KAM-ST, ECF Nos. 384 ("Ramirez Answer"), 691 ("Shayota Motion to Dismiss"); N.D.

23   Cal. Case No. 3:12-CV-05523-WHA, ECF Nos. 259 ("Ramirez Attiq Answer"), 273 ("Shayota

24   Attiq Answer").

25        However, the Ramirez defendants point to two depositions that occurred after the Ramirez

26   defendants signed a settlement agreement.  Ramirez Supp. Ex. A.  These depositions include the

27                                              32

28   Case No. 15-CR-00264-LHK-1
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
     GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS

1  October 23, 2013 deposition of Mario Ramirez and the October 30, 2013 deposition of Walid

2  Jamil.  The motive to cross-examine would likely differ after settlement because liability and

3  damages would have already been decided.  As discussed in Section A, above, the Government

4  has agreed not to introduce the October 30, 2013 deposition of Walid Jamil against the Ramirez

5  defendants and has agreed not to introduce the October 23, 2013 deposition of Mario Ramirez

6  against Camilo Ramirez.  ECF No. 304.  However, the Government may introduce the October 23,

7  2013 deposition of Mario Ramirez against Mario Ramirez as an admission or statement of a party

8  opponent.

9       Overall, with the above exception of the depositions occurring after the Ramirez

10  defendants settled, Defendants had a similar motive to cross-examine the deponents in the civil

11  proceedings as they would in the instant criminal proceedings and the requirements of the former

12  testimony exception have been satisfied.

13                    **2.        Other Hearsay Exceptions**

14       The Government argues that some of the deposition statements are admissible as co-

15  conspirator statements under Federal Rule of Evidence 802(d)(2)(E) or as statements against

16  interest under Federal Rule of Evidence 804(b)(3).  As discussed above, some of the deposition

17  statements the Government seeks to introduce have been excluded under the Confrontation Clause

18  and therefore are inadmissible under any hearsay exception.  Subject to proof of unavailability, the

19  remaining statements will be admissible under the former testimony exception.  Therefore, the

20  Court need not reach whether the co-conspirator exception or the statement against interest

21  exceptions apply.

22          **D.        Notice and Rule 403**

23                    **1.        Notice**

24       Defendants argue that their Fifth Amendment rights have been violated because the

25  Government provided a large number of statements and because the Government did not identify

26  against whom the evidence would be introduced.  Defendants cite to no authority for this

27                                               33

United States District Court
Northern District of California

1    proposition.  In fact, at the October 12, 2016 hearing on the instant motions, defense counsel for

2    Adriana Shayota conceded that the Government is not obligated to identify against which

3    defendant each statement will be introduced.  The Ninth Circuit has generally only required

4    minimal notice of the introduction of evidence where statutory provisions do not require a specific

5    procedure.  *See United States v. Friedman*, 593 F.2d 109, 119 (9th Cir. 1979) ("The appellants

6    were given sufficient advance notice of the Government's intention to introduce the statement,

7    because the possibility of the admission of the document was discussed in the Government's trial

8    brief.").  Therefore, the Court finds that notice was sufficient in this case.[5]

9                    **2.      Rule 403**

10           Under Federal Rule of Evidence 403, evidence should be excluded "if its probative value is

11   substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

12   the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

13   evidence."  Fed. R. Evid. 403.  Here, Defendants argue that admitting the evidence will lead to

14   delaying litigation regarding each individual statement and may even lead to additional severance

15   motions.  Ramirez Mot. at 6.  However, as discussed above, the Court has excluded some of the

16   deposition statements and has found admissible the remainder.  In addition, the statements largely

17   address Defendants' liability.  *See, e.g.*, Deposition of Walid Jamil, Nov. 27, 2012 at 18–35

18   (Walid Jamil providing information on how he replaced Spanish 5-Hour ENERGY labels with

19   English labels and stating that he thought Joseph Shayota had received permission from 5-Hour

20   ENERGY to do so).  Therefore, the potential for "wasting time" does not substantially outweigh

21   the probative value of the evidence.

22           Additionally, Defendants do not explain their argument regarding the need for more

23   severance motions.  On May 10, 2016, the Court granted Kevin and Fadi Attiq's motions to sever.

24   ECF No. 145, at 1.  On August 26, 2016, the Government and Defendants agreed to sever the trial

25

26   [5] Moreover, at the October 12, 2016 hearing on the instant motions, the Government agreed to
     provide a narrower list of statements by October 18, 2016.  The Government did so on October 18,
27   2016.  ECF No. 324.

                                                    34
28

1    of Joseph and Adriana Shayota.  ECF No. 208, at 1.  On September 13, 2016, the Court granted

2    Mario and Camilo Ramirez's motions to sever.  ECF No. 238, at 1.  Accordingly, there are now

3    three separate trials, and each trial contains no more than two defendants.  *Id.* at 1–2.  Specifically,

4    Joseph and Adriana Shayota will be tried in trial number 1; Kevin and Fadi Attiq will be tried in

5    trial number 2; and Mario and Camilo Ramirez will be tried in trial number 3.  ECF No. 294.  It is

6    unclear why Defendants believe that additional severance might be necessary with the admission

7    of the co-conspirator statements after three rounds of severance have already occurred.

8        The following chart summarizes the Court's rulings in the instant Order.  The boxes

9    labeled "Exclude" indicate that the deposition or interview is not admissible against the defendant

10   labeled for that column and the boxes labeled "Admit" indicate that the deposition or interview is

11   admissible against the defendant labeled for that column:

| Date | Deponent/Interviewee | Joseph Shayota | Adriana Shayota[6] | Mario Ramirez | Camilo Ramirez |
|------|----------------------|----------------|--------------------|---------------|----------------|
| November 5, 2012 | Kevin Attiq | Exclude | Exclude | Exclude | Exclude |
| November 8, 2012 | Walid Jamil | Exclude | Exclude | Admit[7] | Exclude |
| November 27, 2012 | Walid Jamil | Admit | Exclude | Exclude | Exclude |
| December 3, 2012 | Mario Ramirez | Admit | Admit | Admit | Exclude |
| December 5, 2012 | Joseph Shayota | Admit | Exclude | Admit | Admit |
| December 6, 2012 | Adriana Shayota | Exclude | Admit | Admit | Admit |
| December 10, 2012 | Leslie Roman | Admit | Admit | Admit | Admit |
| February 7, 2013 | Raid Jamil | Exclude | Exclude | Exclude | Exclude |
| April 25, 2013 | Fadi Attiq | Admit | Admit | Exclude | Exclude |

---

[6] As discussed above in the analysis of conflicts of interest under the Confrontation Clause, the Court has provided the Shayota defendants an additional opportunity to provide more information on the alleged conflict of interest arising from Joseph Shayota's relationship with Tyneisha Evans, and has provided the Government an opportunity to respond.  The admissibility of the statements marked as admissible against Adriana Shayota are subject to the Court's decision on this fourth round of briefing on the exclusion of co-conspirator statements.
[7] Admissible only to the extent the Government and Mario Ramirez agreed the statements were admissible.

35

United States District Court
Northern District of California

| June 19, 2013 | Camilo Ramirez | Admit | Admit | Exclude | Admit |
| September 16, 2013 | Walid Jamil | Admit | Admit | Admit | Admit |
| October 11, 2013 | Kevin Attiq | Admit | Admit | Admit | Admit |
| October 23, 2013 | Mario Ramirez | Admit | Admit | Admit | Exclude |
| October 30, 2013 | Walid Jamil | Admit | Admit | Exclude | Exclude |
| June 18, 2015 | Leslie Roman | Exclude | Exclude | Exclude | Exclude |
| November 30, 2015 | Leslie Roman | Exclude | Exclude | Exclude | Exclude |

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the motion to exclude.

**IT IS SO ORDERED.**

Dated: October 19, 2016

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No. 15-CR-00264-LHK-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO EXCLUDE THE
GOVERNMENT'S NOTICED CO-CONSPIRATOR STATEMENTS