UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>JOSEPH SHAYOTA,<br>　　　　Defendant. | Case No. 15-CR-00264-LHK-1<br>**ORDER DENYING COMPASSIONATE RELEASE**<br>Re: Dkt. No. 763 |

Defendant Joseph Shayota is currently in the custody of the Bureau of Prisons ("BOP") and incarcerated at the Federal Correctional Institution's minimum security camp in Florence, Colorado ("FCI Florence"). Defendant Shayota moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), also known as compassionate release. For the reasons set forth below, the Court DENIES Defendant Shayota's motion.

I.   **BACKGROUND**

On November 28, 2016, following a jury trial, Defendant Shayota was convicted of one count of conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a), and one count of conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce, in violation of 18 U.S.C. § 371. ECF No. 467. On June 20, 2017, the

Court sentenced Defendant Shayota to 86 months imprisonment on Count One, 60 months imprisonment on Count Two to run concurrently, three years of supervised release, a fine of $144,868.00, and a $200.00 special assessment. ECF Nos. 665, 668. On June 27, 2017, the Court granted Defendant Shayota release pending his appeal to the Ninth Circuit. ECF No. 675.

On August 19, 2019, the Ninth Circuit affirmed Defendant Shayota's conviction. ECF Nos. 751, 752. On October 28, 2019, the Ninth Circuit denied Defendant Shayota's petition for rehearing *en banc*. ECF No. 753. Defendant Shayota began serving his 86-month sentence on December 2, 2019, with a BOP-projected release date of January 8, 2026. ECF No. 757. Defendant Shayota is currently serving his sentence at FCI Florence's minimum security camp and at the time of the filing of this order, Defendant Shayota has served approximately five months of his 86-month sentence. *See* ECF No. 774 ("Reply").

On March 19, 2020, Defendant Shayota filed an administrative request for compassionate release with the Warden of FCI Florence. ECF No. 763 at 3. Defendant Shayota argued that he possesses "numerous medical conditions and issues that as incarcerated pose a danger to Inmate with a high probability of death." *Id*. On April 21, 2020, Defendant Shayota's administrative request for compassionate release was denied because, according to the Warden, Defendant Shayota did "not meet the criteria for Requests based on Medical circumstances." ECF No. 766-1.

On March 31, 2020, before Defendant Shayota received a response from the Warden of FCI Florence, Defendant Shayota filed the instant motion for compassionate release, which was not docketed until April 10, 2020. ECF No. 763 ("Mot."). On May 1, 2020, the Government filed an opposition. ECF No. 766 ("Opp."). On May 8, 2020, Defendant Shayota filed a reply. ECF No. 774 ("Reply").

## II.  LEGAL STANDARD

18 U.S.C. § 3582(c) allows a court to modify a defendant's "term of imprisonment . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of

2

30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

"[A]fter considering the factors set forth in § 3553(a) to the extent applicable," a court may grant the motion to reduce the defendant's sentence in two circumstances.  As relevant here, a court may reduce a defendant's sentence if it finds "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).  The relevant Sentencing Commission policy statement enumerates several "extraordinary and compelling reasons."  U.S. Sentencing Guidelines ("U.S.S.G") § 1B1.13(1)(A) & cmt. 1.  A defendant fulfills one of the enumerated reasons when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. 1(A)(ii).  The Commission also requires that the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).

### III. DISCUSSION

In analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), courts determine whether a defendant has satisfied three requirements.  First, a defendant must exhaust his administrative remedies.[1]  Second, a defendant must establish that the § 3553(a) sentencing factors "are consistent with" granting a motion for compassionate release. *United States v. Trent*, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020).  Third, a defendant must demonstrate that "extraordinary and compelling reasons"—as defined by the applicable Sentencing Commission policy statement—"warrant . . . a reduction." 18 U.S.C.

---

[1] Courts disagree as to whether Section 3582's exhaustion requirement is jurisdictional and subject to equitable exceptions. *Compare United States v. Connell*, --- F. Supp. 3d ---, 2020 WL 2315858, at *2-5 (N.D. Cal. May 8, 2020) (finding "Section 3582's exhaustion provision is . . . not jurisdictional" and subject to equitable exceptions), *with United States v. Reid*, 2020 WL 1904598, at *4 (N.D. Cal. Apr. 18, 2020) ("The Court cannot forgive the failure to exhaust, and without exhaustion, the Court lacks jurisdiction over the motion [for compassionate release].").  However, the Court need not reach this issue because both parties in the instant case agree that Defendant Shayota has exhausted his administrative remedies.

Case No. 15-CR-00264-LHK-4
ORDER DENYING COMPASSIONATE RELEASE

3

§ 3582(c)(1)(A)(i).

As to the first requirement, exhaustion, the Government concedes that Plaintiff Shayota exhausted his administrative remedies because 30 days have lapsed from the receipt of Plaintiff Shayota's March 19, 2020 request to the Warden of FCI Florence.  Opp. at 5; *see* 18 U.S.C. § 3582(c)(1)(A) (allowing a court to modify a term of imprisonment "upon motion of the defendant after . . . the lapse of 30 days from the receipt of such a request [to bring a motion on defendant's behalf] by the warden of the defendant's facility").  Moreover, the Warden denied Shayota's request on April 21, 2020.

As a result, only the second and third requirements are at issue in the instant case.  However, because the Court finds that the § 3553(a) sentencing factors weigh against granting Defendant Shayota's motion for compassionate release, the Court need not address whether Defendant Shayota demonstrates that "extraordinary and compelling reasons warrant [a sentence] reduction."  18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A) requires that courts "consider[] the factors set forth in section 3553(a)."  Those factors include, among other things:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed . . . medical care . . . in the most effective manner;
>
>    . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The Court begins its analysis by considering the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further

4

crimes of the defendant; and the need to avoid unwarranted sentence disparities.

Defendant Shayota's jury trial began on October 24, 2016. ECF No. 377. On November 28, 2016, a jury convicted Defendant Shayota of the crimes charged: one count of conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a), and one count of conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce, in violation of 18 U.S.C. § 371. ECF No. 467.

The evidence at trial overwhelmingly showed that Defendant Shayota led a scheme to repackage and sell 353,592 bottles of 5-Hour Energy liquid supplements with counterfeit labels. ECF No. 766-2 at 7. Defendant Shayota then led a scheme that manufactured counterfeit liquid in vats in a filthy warehouse in Mexico with no government regulation or oversight; created counterfeit 5-Hour Energy bottles, labels, and display boxes; placed fictitious lot numbers and expiration dates on the counterfeit-5-Hour Energy bottles; then sold 3,794,256 of these counterfeit bottles filled with counterfeit liquid throughout the United States. *Id.*; ECF No. 576 at ¶¶ 42-45. Defendant Shayota's crimes endangered the health and safety of the public because the counterfeit liquids with fictitious labels and fictitious expiration dates were ingested by unknowing members of the public.

Although Defendant Shayota did not have a criminal history prior to the instant conviction, Defendant Shayota previously had manufactured counterfeit packaging and engaged in the unauthorized sales of Equal, Splenda, and Uncle Ben's Rice. ECF No. 282. Defendant Shayota also had previously engaged in the unauthorized sales of Monster Energy drinks, Mars candy, Welch's products, and Mott's products. *Id*.

At Defendant Shayota's sentencing on June 20, 2017, the Court rejected Defendant Shayota's objection to a four-level role adjustment and Defendant Shayota's argument that Co-Defendant Walid Jamil and not Defendant Shayota was the organizer and leader of the offenses. ECF No. 766-2 at 8 (June 20, 2017 sentencing transcript). At the sentencing, the Court stated: "But the evidence presented at trial showed that Joseph Shayota recruited Walid Jamil to relabel the 5-Hour Energy from Spanish to English, and when Joseph Shayota could not buy any more 5-

5

Hour Energy, he came up with the scheme to manufacture and sell counterfeit 5-Hour Energy in the U.S. and asked Walid Jamil to execute the scheme." *Id*. at 8:15-20. The Court stated further: "Walid was doing Joe's bidding and Adriana then financed the counterfeiting scheme." *Id*. at 8.

Moreover, the Court noted that Defendant Shayota's crimes were motivated by "pure greed." ECF No. 766-2 at 14. Defendant Shayota and his wife Adriana Shayota had assets of $16,104,442 and a net worth of $12,527,955. *Id*. at 13. They lived in a six-bedroom, six-bathroom home with a swimming pool and a basketball court. ECF No. 576 at 17. They owned a Ferrari, two Mercedes-Benz cars, three Range Rovers, and a Toyota truck and leased a Bentley and a Smart car. ECF No. 766-2 at 13. Yet they manufactured counterfeit liquids, bottles, labels, display boxes, lot numbers, and expiration dates and thus endangered the health and safety of the public to make unlawful profits.

On June 20, 2017, the Court sentenced Defendant Shayota to 86 months imprisonment on Count One, 60 months imprisonment on Count Two to run concurrently, three years of supervised release, a fine of $144,868.00, and a $200.00 special assessment. ECF Nos. 665, 668. Defendant Shayota's 86-month sentence was a significant downward variance from his sentencing guideline range of 151 to 188 months of imprisonment. ECF No. 766-2 at 10-11, 15. The Probation Office had recommended a sentence of 108 months imprisonment. ECF No. 576. The Government had recommended a sentence of 151 months imprisonment. ECF No. 588. Defendant Shayota had requested a prison sentence of 36 months. ECF No. 592. The Court varied downward from the sentencing guideline range because of Defendant Shayota's age, health, persecution as a Chaldean Christian in Iraq until he was 21 years old, the fact that he worked since he was 14 years old, letters from current and former employees praising his good treatment of and support for his employees, and the fact that the infringement amount may have overstated the seriousness of the offense and may have substantially exceeded the actual pecuniary harm to the victim. ECF No. 766-2 at 14-16.

On June 27, 2017, the Court granted Defendant Shayota bail pending appeal. ECF No. 675. On August 19, 2019, the Ninth Circuit affirmed Defendant Shayota's conviction. ECF Nos.

751, 752. On October 28, 2019, the Ninth Circuit denied Defendant Shayota's petition for a rehearing *en banc*. ECF No. 753. On October 31, 2019, Defendant Shayota requested a self-surrender date of December 2, 2019, which the Court granted. ECF Nos. 756, 757, 758.

Based on the trial evidence, the Court found that Defendant Shayota was the most culpable of all the defendants in the instant case and thus sentenced him to the longest sentence. The least culpable defendants, Co-Defendants Camilo Ramirez and Fadi Attiq, successfully completed pretrial diversion programs, so their cases were dismissed. ECF Nos. 515, 706. Co-Defendant Mario Ramirez was sentenced to five years of probation and six months of home confinement. ECF No. 525. Co-Defendant Kevin Attiq was sentenced to three years of probation and eight months of home confinement. ECF No. 656. Co-Defendant Juan Romero remains a fugitive. Opp. at 18 n.5.

The remaining Co-Defendants were sentenced to imprisonment. The Government notes that the following Co-Defendants "served their entire custodial sentences." Opp. at 18. According to the Government, Co-Defendant Justin Shayota served 6 months, Co-Defendant Raid Jamil served 24 months, and Co-Defendant Leslie Roman served 32 months. *Id*. Co-Defendants Raid Jamil and Leslie Roman may have served slightly shorter sentences if they qualified for good time credits, *see* 18 U.S.C. § 3624(b), but the Government does not indicate whether these two Co-Defendants qualified for good time credits.

Furthermore, Defendant Shayota's wife, Co-Defendant Adriana Shayota, began serving her 26-month sentence on December 2, 2019, the same day that Defendant Shayota began serving his 86-month sentence. Co-Defendant Adriana Shayota is currently 49 years old, and at the time of sentencing, was in good physical health, did not take any medications, and had not suffered any mental or emotional health problems. ECF No. 577 ¶¶ 74, 84, 85. As a result, she is currently an unlikely candidate for compassionate release and will likely serve her full sentence with a slight reduction if she qualifies for good time credits.

As the Government and Defendant Shayota correctly note, as of the filing of this order, Defendant Shayota has served approximately five months of his 86-month sentence, or a mere *six*

*percent* of his total sentence. Opp. at 18; Reply at 8. If Defendant Shayota were granted compassionate release at this time, he would have served less time than any of his Co-Defendants who received prison sentences, all of whom were less culpable than Defendant Shayota. For example, Defendant Shayota would serve less prison time than Co-Defendant Justin Shayota who was sentenced to 6 months imprisonment and was not eligible for good time credits because his sentence did not exceed 1 year. 18 U.S.C. § 3624(b) (permitting prisoners "serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life" to receive good time credits for "exemplary compliance with institutional disciplinary regulations"). Defendant Shayota would serve less time than his wife, Co-Defendant Adriana Shayota, who was sentenced to 60 months or five years less prison time than Defendant Shayota. Defendant Shayota does not even respond to the egregious sentencing disparities identified by the Government because he cannot do so. *See* Opp. at 17-19; Reply.

On May 21, 2020, the Court granted compassionate release to Co-Defendant Walid Jamil and ordered that Co-Defendant Jamil serve the remaining portion of his original term of imprisonment, as calculated by the BOP, as supervised release with the special condition of home confinement, followed by the three year term of supervised release imposed in the original sentence. ECF No. 779 at 10. Co-Defendant Jamil, who had served 34 months of his 84-month sentence or approximately 40 percent of his total sentence, had served more time than any other Co-Defendant in the instant case. *Id*. at 7-8. Most importantly, the Government represented that the BOP would release Co-Defendant Jamil to home confinement in January 2021, after he served 50 percent of his sentence. *Id*. at 2. Thus, the Court's compassionate release order allowed Co-Defendant Jamil to begin his home confinement 8 months early. *Id*. at 7. Other courts have granted compassionate release when defendants have 8 months of custodial time remaining. *See, e.g., Trent,* 2020 WL 1812242, at *2 (granting compassionate release to a defendant with 8 months remaining on his sentence).

By contrast, Defendant Shayota has only served 5 months or 6 percent of his prison sentence. Moreover, unlike Defendant Shayota, Co-Defendant Jamil had accepted responsibility

8

and had pled guilty. ECF No. 779 at 5. Co-Defendant Jamil had no rule violations or misconduct during his 34 months of imprisonment. *Id*. at 5-6. Co-Defendant Jamil had negative net worth. ECF No. 564 ¶ 95 (Jamil PSR). Co-Defendant Jamil is a sixty-year-old diabetic who suffers from hypertension and high cholesterol and takes insulin twice daily along with a number of other medications. *Id*. at 2. "Individuals . . . who suffer from [hypertension, high cholesterol, and diabetes], are now known to have a higher risk of becoming infected with, being hospitalized due to, and even dying from COVID-19." *United States v. Connell*, --- F. Supp. 3d ---, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020) (citing CDC statistics).

Although it is true that Defendant Shayota's crimes were not violent, they endangered the health and safety of the public as stated above. It is also true that Defendant Shayota has had no disciplinary issues during his five months in custody. Reply at 8. Nonetheless, based on the full record, the Court finds that the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities strongly weigh against Defendant Shayota's compassionate release motion.

Moreover, Defendant Shayota does not cite, and the Court has not found, a comparable case in which a defendant was compassionately released after serving 5 months and having a term of 81 months imprisonment remaining. In fact, United States District Judge Jon Tigar of the Northern District of California concluded that permitting compassionate release for a defendant who "has served only roughly 20 percent of his sentence . . . would not satisfy the need for the sentence imposed . . . to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense. Nor would it afford adequate deterrence to criminal conduct or adequately protect the public from further crimes of the defendant." *United States v. Furaha*, --- F. Supp. 3d ---, 2020 WL 2315640, at *4 (N.D. Cal. May 8, 2020). Indeed, in *Furaha*, the defendant's argument in favor of granting his motion for compassionate release was stronger

9

than Defendant Shayota's. In *Furaha*, the defendant had served approximately eight months of his 37-month sentence. Here, Defendant Shayota has only served five months of a longer 86-month sentence—or approximately six percent of his total sentence.

Moreover, United States District Judge Richard Seeborg of the Northern District of California has held that, "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis," with a longer remaining sentence weighing against granting any such motion. *See Connell*, 2020 WL 2315858, at *6; ECF No. 779 at 8.

On the other hand, § 3553(a)(2)(D)—which requires courts to consider the need for the sentence imposed to provide the defendant with needed medical care in the most effective manner—weighs in favor of Defendant Shayota's motion. Defendant Shayota is 68 years old and suffers from, among other things, asthma, emphysema, hypertension, and heart disease. ECF No. 766-3 at 38; Opp. at 13; Reply at 5. He has had multiple heart attacks, suffers from chronic obstructive pulmonary disease, and takes a number of medications to treat these illnesses. ECF No. 766-3 at 38-40, 44-45; Opp. at 13; Reply at 5. "Chronic lung disease increases a person's risk of getting severely ill from COVID-19." *United States v. Reid*, 2020 WL 2128855, at *3 (N.D. Cal. May 5, 2020) (citing Centers for Disease Control ("CDC") statistics). Indeed, the Government "acknowledges that Defendant is 68 years old and suffers from numerous medical conditions that, according to the Centers for Disease Control, place [him] at risk of contracting COVID-19." Opp. at 13 (citing CDC statistics).

However, the Government notes that in light of the pandemic, the BOP has been given expanded authority to review inmates who are potentially vulnerable to COVID-19 earlier in their sentences for transfer from a secure facility to home confinement. Opp. at 4. "As a result, BOP is broadly evaluating inmates for placement in home confinement according to internal guidelines, with priority given to those most vulnerable to COVID-19 and those at facilities most affected by COVID-19." *Id*. "As of April 30, 2020, BOP had increased home confinement by over 65.5% since March and continued to aggressively screen all potential inmates for eligibility, without any need by the inmate to apply for consideration." *Id*. However, BOP will not transfer inmates from

a facility with zero cases, like FCI Florence, to a defined hot spot, like San Diego County, where Defendant Shayota requests home confinement. *Id*. at 5. The Government further represents that given the rapidly changing nature of this pandemic, BOP will re-evaluate Defendant Shayota if circumstances at FCI Florence change, if Defendant Shayota's circumstances change, or if Defendant Shayota presents a different release plan. *Id*.

Nonetheless, as numerous courts have noted, the realities of incarceration prevent imprisoned defendants from engaging in practices that reduce the risk of contracting COVID-19. *See, e.g., United States v. Lucas*, 2020WL 2059735, at *3 (W.D.N.Y. Apr. 29, 2020) (noting that the "conditions [at FCI Morgantown] make the social distancing required to minimize the risk of contracting COVID-19 nearly impossible" and that this "is not surprising given the challenges social distancing presents in a prison or any facility with many residents"). Furthermore, defendants are "unlikely to be able to get the medical care [they] need[] [while imprisoned] in the midst of the pandemic." *Connell*, 2020 WL 2315858, at *6. In light of this, the Court concludes that § 3553(a)(2)(D) weighs in favor of Defendant Shayota's motion. However, the totality of the § 3553(a) factors weigh decisively against Defendant Shayota's motion, and thus, the Court DENIES his motion for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Shayota's motion for compassionate release.

**IT IS SO ORDERED.**

Dated: May 26, 2020

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

11
Case No. 15-CR-00264-LHK-4
ORDER DENYING COMPASSIONATE RELEASE